STEFFEN *et al.*, *Appellants*, v. BAUER.

1. **Married Woman's Deed**: IMPEACHMENT OF CERTIFICATE OF ACKNOWLEDGMENT A certificate of acknowledgment of a married woman's deed made by a proper officer and in substantial compliance with law, is *prima facie* evidence of the acknowledgment; but it may be impeached, and for this purpose it is not necessary to show fraud or imposition practiced on the grantor. It will be sufficient to show that she was not examined separate and apart from her husband, or that she was not made acquainted with the contents of the instrument by the officer making the certificate. (Following *Wannell v. Kem*, 57 Mo. 480.)

2. **Evidence**: REFRESHING WITNESS' MEMORY. When the truth of a certificate of acknowledgment given by a notary on a printed form is the matter in dispute, and the notary is called as a witness, it is not proper to exhibit the certificate to him by way of refreshing his memory. It can be of no service for that purpose.

3. **Action for Wife's Land**: HUSBAND A COMPETENT WITNESS. In an action brought by husband and wife to set aside a deed of trust on the wife's land, the husband is not disqualified as a witness. His marital right in the property gives him such an interest as entitles him to testify on his own behalf. It is not material that his testimony will necessarily affect his wife's interest also.

*Appeal from Bates Circuit Court.*—HON. WM. S. SHIRK, Judge.

REVERSED.

Action by Henry Steffen and Mary, his wife, against John P. Bauer and Wm. Page to set aside a deed of trust on land, the title to which was vested in said Mary. Page was trustee and Bauer beneficiary in the deed of trust.

*C. C. Bassett* for appellants.

*Wm. Page* for respondents.

NAPTON, J.—This was an application to a court of equity to set aside and declare void a deed of trust executed by plaintiffs to secure three notes given by the husband, Henry Steffen, to the defendant, Bauer, on the ground that the certificate of the notary was false in point of fact, and

that no such privy examination as the statute requires was in fact made. The bill also prays for a cancellation of the notes, on the ground that the maker, Henry Steffen, was deceived by the defendant, Bauer, in regard to the condition of his indebtedness, and because the notes were executed under the influence of threats of criminal prosecution. The answer of Bauer denies the facts alleged, both in regard to the deed and the notes, and avers that the land did not, in equity, belong to Mrs. Steffen, but was bought with her husband's money and the title put in her to defraud his creditors, and in conclusion, prays the court that "in case it should find that said deed of trust was not properly executed, then that the court will ascertain the amount to be due him by plaintiff, and will declare said Mary Steffen to hold the said land in trust for her husband, and will order said land to be sold to satisfy the debt due him by plaintiff, Henry Steffen." Page, the other defendant, was the trustee in the deed, and his answer is merely formal. The court found the issues for defendants, and, therefore, dismissed the bill with costs.

We are unable to concur with the circuit judge in his finding on the first point in issue. This disagreement is 1. MARRIED WOM-AN'S DEED: impeachment of certificate of acknowledgment. not on account of any preponderance of testimony, one way or the other, in which event we should let the verdict of the court, who heard the witnesses, stand, but it is because we are disposed to adhere to the decision of this court in *Wannell v. Kem*, 57 Mo. 480, and *Sharpe v. McPike*, 62 Mo. 300, whilst the circuit court probably preferred the more liberal interpretation of the statute which has prevailed in the Supreme Court of Illinois. *Monroe v. Poorman*, 62 Ill. 524. In our court it was observed, (see *Wannell v. Kem*, 57 Mo. 481,) "our statute laws point out and direct the mode, and the only mode, in which a married woman can convey her lands, and particularly specifies the duty of the court or officer before whom the acknowledgment is taken, and the character of the certificate to such acknowledgment. The

certificate must substantially conform to the requirements of the statute, and the facts certified to must, of course, be true and not false.    The certificate, if substantially in compliance with the law, is sufficient evidence of the wife's acknowledgment, but it is not conclusive, and may be shown on a proper issue to be false."

On the other hand, in the case reported from the Illinois Supreme Court above referred to, it was held that, "where the certificate of the acknowledgment of a deed is in conformity to law, it can only be impeached for fraud or imposition.    The certificate must be judged of by what appears on its face.    Therefore, proof negativing the necessary facts shown therein, will not alone be sufficient to impeach the certificate."    This decision seems to have been followed in effect in the subsequent cases of *Marston v. Brittenham,* 76 Ill. 611, and *McPherson v. Sanborn,* 88 Ill. 150, and several other cases therein cited.

In the present case there were two or three facts established by the evidence which clearly showed that our statute was not complied with, although not the slightest fraud or imposition was practiced by any one, either the husband, the creditor or notary.    The wife was not examined "separate and apart from the husband."    All the five persons present, the notary, the defendant, Bauer, the plaintiff, his wife and her brother, agree that the plaintiff and his wife were both in the room when the wife signed the deed, some say about four feet apart, others six feet ; but whether four or six feet from each other, they were in full view and hearing of each other, and could have no difficulty in communicating with each other both by looks and words.    I do not suppose it necessary to a compliance with the law that the husband should be in a different house, or necessarily in a different apartment, if the circumstances show an absence of all power of communication with each other.    But it is obvious that in the kitchen or cooking room of a small farm house, where this acknowledgment was taken, the presence of the husband within a

26—70

few feet of his wife did not amount to the separation and privacy required by our law.

Again, it appears from the testimony of the notary who took the acknowledgment that the wife was not "made acquainted with the contents of the deed." His statement is this: "I then read a portion of the deed to Mrs. Steffen, and then told her I supposed she understood what it was for; she said she did, and she hesitated a little, but finally signed it; after she signed it, I asked her if she acknowledged it to be her act and deed, and she said yes. I don't remember that I said anything more." It was observed on this subject in *Wannell v. Kem:* "The Legislature has required, for good reasons, a privy examination, and an explanation on such privy examination of the contents or purport of the deed. The courts have no power to say that those things in a particular case were unnecessary, on the ground that the facts in such case were, that there was no compulsion, and the wife was really entirely familiar with the deed and executed it without the slightest improper influence from her husband. The object of our statute is to prevent imposition on the wife in the disposition of her land, and, therefore, it is not intended to leave it in the power of the husband to explain to his wife the object and purport of the deed, but to require a disinterested officer or court to make to her whatever explanation is necessary, and to ascertain her willingness to sign the deed. If a previous examination by the wife of a deed which she is called upon to acknowledge, is all that is necessary, it would be in the power of an unscrupulous husband to procure her acknowledgment to a different deed from the one previously explained to her, in case the signature is made first in the presence of the notary. *

* To prevent any such imposition on the wife, it was, therefore, provided that a specified officer or court should examine the wife, separate and apart from her husband, and on such examination should explain to her the object of the instrument proposed to be acknowledged, and should

ascertain in this way that the wife was not unduly influ-
enced by her husband, and certify to these facts in his cer-
tificate of acknowledgment." It is scarcely necessary to
add that if these views of our statute are correct, there
was no such explanation made by the notary as was re-
quired.

In the course of the examination of the notary who
took this acknowledgment, the court put the following ques-
2. EVIDENCE: re- tion to the witness: "Did you ask her if
freshing witness'
memory.            she signed the deed and acknowledged it
without compulsion or undue influence of her husband?"
to which the notary answered, "I did not." The defend-
ant's attorney asked the witness to read the certificate of
acknowledgment, and after he had examined it, he was
asked by the attorney the following question: "Now,
after refreshing your memory by examining that paper, I
will ask you if you put the questions contained in the cer-
tificate of acknowledgment?" This was objected to, be-
cause the question was leading, and because the certificate
is not such a paper as the witness can examine to refresh
his memory with; but the objection was overruled and the
witness answered: "I asked her the questions the certifi-
cate required." Upon cross-examination the witness ad-
ded: "I think I asked her the requirements of the deed.
The only way I know that I asked her the questions re-
quired is from reading the certificate." The answer ex-
pressed plainly, amounts to this, that he had no recollection
of having propounded the question suggested by the court,
but that seeing his name to the certificate he presumed,
from the fact that he had so certified, that he had done
what the law required. Now the witness, though evidently
a candid and truthful man, attaches more importance to
seeing his signature to a certificate than others would be
disposed to do, seeing that he had also certified that he
examined the wife separate and apart from the husband,
which he admits he had not done, and that he also certified
to the fact of making her acquainted with the contents of

the deed, which, as we have already seen, was not done. Had the witness been handed the statute book and pointed to the 13th section of the 1st article of the act concerning conveyances, his memory could have been as well refreshed as by the printed form of acknowledgment to which his signature was attached.

Another point is presented by the record of this case which it is proper to notice, though its decision, one way or the other, will not affect the result. When the plaintiff, Henry Steffen, was on examination as a witness, it was proposed to prove by him that his wife, Mary, signed the deed under compulsion by him, that he threatened to leave her if she did not sign it, and was present in the room when her acknowledgment was taken. To this evidence defendants objected on the ground that, as the husband of said Mary, he could not testify in her behalf. The objection was sustained by the court and the plaintiff excepted.

<span style="float:left">3. ACTION FOR WIFE'S LAND: husband a competent witness.</span>

Since the abolishment by our statutes of several rules of evidence established by the common law, it is frequently difficult to determine the extent to which the substituted rules were designed to go. The plaintiff, Steffen, was clearly competent to testify, as a party, in regard to any fact touching his own interest alone, and so the circuit court held in this case, but he was not allowed to testify on an issue which was supposed chiefly to affect his wife's interest. It is obvious, in this case, that he had an interest in the issue as well as his wife, since in the event of her death he would be tenant by the curtesy, and also had an interest in his wife's land during coverture. The 14th section of the act concerning married women, (2 Wag. Stat., 935,) provides that the rents, issues and products of the real estate of any married woman, and the interest of her husband in her right in any real estate which belonged to her before marriage, or which she may have acquired by gift, grant, devise or inheritance during coverture, shall, during coverture, be exempt from attachment or levy of

execution for the sole debts of the husband, &c.   The husband, therefore, cannot testify for the wife, on this issue concerning the validity of the trust deed without also testifying for himself, to the extent of his interest.   It strikes me, therefore, that the distinction taken by the circuit court is too refined to be of much practical use, and is not authorized under our statutes as they now stand.

In regard to the second issue in this case, we entirely concur with the finding of the circuit court.   There was no satisfactory evidence of fraud, or misrepresentation or improper threats on the part of the defendant, Bauer, in obtaining the notes to secure which the deed of trust was made.   It appears that Bauer was a merchant at Topeka, Kansas, and the plaintiff, Steffen, was a contractor for some work on the Atchison, Topeka & Santa Fe Railroad; that Steffen made an arrangement with Bauer to furnish such supplies as he had in his store to Steffen and his employees, to be paid for when he received his money from the company; that in August, 1871, when Steffen finished his contract, Bauer's account against him amounted to over $1,000; that Steffen called to see him and promised to settle the same, but left Topeka in the night with his family and came to Bates county, in Missouri, and about five days after he left Kansas purchased the land heretofore spoken of, and had it conveyed to his wife.   Bauer then brought suit by attachment in Topeka, and in the end obtained a judgment, but only realized about $70.   In August, 1873, learning the whereabouts of Steffen, Bauer went over to Bates county, and at first Steffen proposed to pay him what was still due, by conveying some Kansas lands he had lived on in that State, but it was discovered that he had conveyed this land to his sons by a former wife, and then the arrangement was made for Steffen to execute three notes, one for $250, payable in one year, one for $250, payable in two years, and a third for $500, payable in three years, the entire sum of $1,000 to be secured by the deed of trust. This was $200 less than what Bauer claimed to be due.

There was some evidence of threats to arrest Steffen on criminal process for obtaining goods under false pretenses, and there was some contradictory proof in regard to the exact amount of Bauer's account. The circuit court passed upon this, and its finding was justified by the proofs.

The defendant, Bauer, insisted in his answer that this deed to Mrs. Steffen was made at Steffen's instance, with a view to defraud his creditors. It was clearly established that the father and mother of Mrs. Steffen were poor and utterly without means to have advanced the purchase money, or any part of it, to their daughter. The purchase in Bates county was made a few days after Steffen left Topeka with the money paid him by the railroad company. He had previously conveyed his lands in Kansas to his sons. These facts were conclusively established, and although they do not necessarily prove a fraudulent purpose and might be explained, they certainly have a suspicious look. The circuit court did not pass upon this part of the answer, which was in the nature of a cross-bill in equity, as it was entirely unnecessary in the view of the other issues taken by the court. As, however, the judgment must be reversed because of the finding of the court in regard to the validity of the deed of trust, we shall remand the case that the court may investigate this question, and may, if satisfied of the truth of these allegations in the answer, declare the legal title of Mrs. Steffen held only in trust for her husband's creditors, and order the same to be sold to satisfy the amount of Bauer's claim, the notes for which were not all due at the trial, but are past due now. Judgment reversed and case remanded. The other judges concur.