### PIERCE *et al.* v. FEAGANS *et ux.*

*(Circuit Court, E. D. Missouri, N. D.* February 6, 1889.)

1. **LIS PENDENS—WHEN APPLICABLE.**
   Pendency of a former suit in a state court, brought by the mortgagors against the trustee in a deed of trust and others, to restrain the trustees from selling the mortgaged property under a power of sale in the mortgage, is no defense to a suit to foreclose the mortgage in a federal court, where the parties are not identical.

2. **SAME.**
   Although complainants in the suit in the federal court, who are defendants in the suit in the state court, might, by the state practice, file a cross-bill praying foreclosure, they are not bound to do so where they are non-residents, but may bring suit in the federal court.

3. **SAME—STATE AND FEDERAL COURTS.**
   Pendency of a former suit in a state court is no defense to a suit of the same nature, and between the same parties, brought in the federal court.

4. **SAME—PLEADING.**
   The defense of *lis pendens*, in equity, must be made by plea, and not by answer.

5. **DEED—ACKNOWLEDGMENT—EVIDENCE.**
   A notary's certificate, attached to the deed of a married woman, that she acknowledged, separate and apart from her husband, that she executed it of her own free will, was corroborated by the notary. There was no evidence of fraud or duress. Defendants, who were vitally interested, and another witness, who was disinterested, but whom the notary denied was present, impeached the certificate. Defendants gave no other evidence than their and his own statements that such disinterested witness was present. The testimony of all the witnesses was taken six years after the execution of the deed, and all testified with great minuteness of detail. *Held,* that the evidence was not sufficiently clear and convincing to overcome the certificate.

In Equity. On bill for foreclosure.

*W. J. Patterson,* for complainants.

*B. R. Dysart,* for defendants.

THAYER, J.    This is a bill to foreclose a deed of trust in the nature of a mortgage on property of Mrs. Addie L. Feagans, situated in Macon county, Mo.    The deed of trust purports to have been acknowledged by Mrs. Feagans and her husband on July 25, 1882, to secure a loan of $2,000, to mature on July 1, 1887.    Interest was duly paid on the loan until July 1, 1885, since which date no payments, either of principal or interest, appear to have been made.    The defenses interposed are twofold: *First,* a plea of *lis pendens;* and, *second,* that Mrs. Feagans' acknowledgment was not taken by the notary before whom the deed of trust was acknowledged, in substantial conformity with the laws of this state in force when the acknowledgment was taken.

1. The first of the above defenses cannot avail the defendants.    The suit relied upon as establishing the defense of *lis pendens* was a suit brought by Mrs. Feagans and husband in the circuit court of Macon county, Mo., against J. B. Watkins, trustee in the deed of trust, and against Francis T. Pierce and his attorney, to restrain the trustee from selling the mortgaged premises under a power of sale contained in the mortgage.    The parties to the two suits are not identical, and the relief sought is not the same.    This of itself is sufficient to defeat the plea. It is true that, under the practice which obtains in the state court, the complainants, who are defendants there, might file a cross-petition, and pray for a foreclosure of the mortgage, but they are not bound to do so. Being non-residents they are entitled to invoke the jurisdiction of the federal court for the foreclosure of their mortgage, and they are not deprived of that right merely because a suit has been brought against them in the state court, of such nature that they might file a cross-bill, and obtain similar relief there.    *Manufacturing Co.* v. *Scutt,* 22 Fed. Rep. 710. Again, the suit in the state court is pending in a different jurisdiction. It is now well settled that the pendency of a suit in a state court cannot be taken advantage of by way of a plea of *lis pendens,* to defeat a suit of the same nature, and between the same parties, in the federal courts. The two courts, though not foreign to each other, belong to different jurisdictions in such sense, that the doctrine of *lis pendens* is not applicable.    *Stanton* v. *Embrey,* 93 U. S. 554; *Gordon* v. *Gilfoil,* 99 U. S. 169–178; *Sharon* v. *Hill,* 22 Fed. Rep. 28.    And, lastly, for a technical reason the defense of *lis pendens* must be ignored.    It is made by answer, and not by plea.    The defense in question, being in the nature of a plea in abatement, should be made by plea, and not by answer, and, not having been so made, is waived.    Story, Eq. Pl. §§ 708, 735; Equity Rule No. 39.

2. Passing to the second defense, it is well to note that it is not claimed in this case that any fraud or imposition was practiced on Mrs. Feagans to induce her to sign the deed of trust; nor is it claimed that her husband exercised undue influence over her, or that he so compelled her to sign it against her will.    The money raised on the deed of trust or mort-

gage was needed to lift another prior mortgage on the same property, which appears to have been a valid lien; and the greater part of the money was so used. That Mrs. Feagans acted with the utmost freedom—that her will was in no sense dominated by that of her husband or any other person—cannot be doubted. The sole complaint is that she did not acknowledge to the notary, separate and apart from her husband, that she executed the deed freely and without compulsion. The contention is that the notary's certificate that she did so acknowledge it is false. Since the leading case of *Wannell* v. *Kem*, 57 Mo. 480, 481, holding that the certificate of a notary or other officer empowered to acknowledge deeds, is not conclusive evidence of the facts therein stated, but may be impeached, and the deed thereby nullified in so far as it affects the wife's interest in the lands conveyed, even though no fraud, imposition, or duress was actually practiced on her,—the state courts have frequently had occasion to consider the kind and degree of proof that ought to be required to overcome such certificates, even conceding that they are only *prima facie* evidence of the facts attested. Thus, in *Bohan* v. *Casey*, 5 Mo. App. 110, it was said that the evidence to impeach a certificate of acknowledgment of a married woman ought to be "clear and convincing," so as to satisfy the court that the certificate is false. It was further said in the same case that, when the testimony of the complainant alone is relied upon to impeach a certificate, it ought to be supported by a "concurrence of material circumstances." In *Morrison* v. *McKee*, 11 Mo. App. 594, the same court held that they would not set aside a finding of the lower court in favor of the validity of a deed, in the absence of any evidence of fraud, although the testimony both of the grantor and the notary tended strongly to contradict the certificate of acknowledgment. In *Biggers* v. *Building Co.*, 9 Mo. App. 210, where there was no evidence of fraud or collusion between the grantee and the notary, and no circumstances tending to corroborate the testimony of the complainant contradicting the certificate, the court held that the complainant's testimony did not make out a *prima facie* case as against the certificate. In *Rust* v. *Goff*, 94 Mo. 519, 7 S. W. Rep. 418, it was held that the evidence necessary to impeach and overthrow a certificate of acknowledgment should be "clear, cogent, and convincing;" and the same remark was repeated in *Mays* v. *Pryce*, 95 Mo. 612, 8 S. W. Rep. 731. In most, if not all, of the cases in the state courts wherein a successful assault has been made upon a certificate of acknowledgment that was in due form and by the proper officer, there is to be found either some evidence of fraud or imposition practiced on the wife such as was well calculated to excite suspicion of the verity of the notarial certificate, or some evidence of collusion between the parties, or proof of circumstances strongly tending to show that the officer taking the acknowledgment did not comply with the law, or a general concurrence of testimony on the part of all concerned in the transaction that the law in some material respect was not complied with. *Wannell* v. *Kem, supra; Sharpe* v. *McPike*, 62 Mo. 300; *Steffen* v. *Bauer*, 70 Mo. 399; *Mays* v. *Pryce, supra*. In the present case three witnesses (Mr. and Mrs. Feagans and Louis Rider) have

given evidence tending to impeach the certificate. The testimony of the notary substantially corroborates the certificate. The testimony of all four of the witnesses last named, who claim to have been present on the occasion of the acknowledgment, was taken more than six years after the event to which it relates.

As I have before remarked, there is no evidence of fraud, imposition, or duress in the case. Outside of the oral testimony last mentioned, there is not a single independent fact or circumstance tending to impeach the verity of the certificate. It is true that the recorder's memoranda of the time when the mortgage was filed for record confirms the statement of defendant's witnesses, rather than the testimony of the notary, as to the hour of the day when the acknowledgment was made, but it throws no light on the important question how the acknowledgment was taken. The notary may be right in his recollection that it was taken in the afternoon, towards evening. It may have been taken on the evening of July 24, 1882, and the certificate may have been made the following morning, and either intentionally or erroneously dated as of July 25, 1882, neither of which facts would impair it, if the acknowledgment was properly taken. But, in any event, it is the certificate that is to be overcome. That is in itself evidence of a high grade of the facts it attests, and its force is not impaired by the circumstance that the notary, in his oral testimony, given six years after the event, made a mistake as to the hour of the day when the acknowledgment was taken, even if he did make such mistake. The weight to be given to the testimony of Mr. and Mrs. Feagans is very much lessened by the consideration that they are vitally interested in the result of the suit. The court cannot overlook the fact, in a case of this character, that human testimony is often swayed by self-interest, and that it is comparatively easy, when witnesses are testifying concerning a transaction that occurred six years ago, and that has become indistinct in the memory, to make their recollection of the details of the occurrence conform to their present interest. The force of the last remark is well illustrated in the present case by Mrs. Feagan's testimony. While she does not claim to have been imposed upon by her husband, or any one else, in the matter of executing the deed of trust, and while she admits that she stated to the notary that she signed it freely, and knew what the instrument was, yet there is throughout her entire examination a disposition manifest to convey the impression that she did not know at the time, and did not learn for nearly six years thereafter, that the deed of trust in question covered her homestead. And such is the impression conveyed by her testimony. She does not say, however, what property she supposed was being conveyed or mortgaged; nor does she state whether her husband or herself had at the time any property other than the homestead to which the mortgage could relate. But notwithstanding the impression so conveyed by her evidence, it is clearly apparent to the court that she must have known, and did know, when she executed the deed of trust that it covered the homestead, and that it was agreed between herself and her husband that a new loan should be made thereon for the purpose of discharging a prior mortgage on the property.

I would not be understood as intimating that, because Mrs. Feagans knew that the homestead was being mortgaged, and freely joined therein, that therefore the conveyance is to be deemed valid, although the notary did not take her acknowledgment separate and apart from her husband. No such proposition is advanced. I merely instance the singular impression conveyed by her testimony in the respect above noted, as a sufficient reason why the court ought not, in cases of this kind, to place much reliance on the testimony of interested parties, without strong corroborating circumstances, especially when they narrate the details of a transaction that in all human probability were not at the time considered important, and did not make much of an impression on the mind. If Mrs. Feagans cannot now remember, or has forgotten, that the mortgage covered her homestead, it is not probable that her recollection is at this time very clear upon the point whether her husband left the room for a few moments when her acknowledgment was taken.

Louis Rider, who testified in defendant's favor, must be regarded as a disinterested witness. The notary, however, denies that any such person was present when the acknowledgment was taken, or that any one was present but himself and Mr. and Mrs. Feagans. Mr. Rider lived in an adjoining county at the time, but claims to have been at defendants' house on a visit when the acknowledgment was made. Notwithstanding the emphatic assertion of the notary that Rider was not present, defendants did not offer any proof besides their own and Rider's statement, that in point of fact Rider was a visitor at their house on the occasion in question. By due diligence convincing proof of that fact might (as it appears to the court) have been obtained, but no efforts seem to have been made in that direction. Then, again, Rider testifies with a minuteness of detail that is surprising, considering the fact that he was merely a casual observer of the transaction, and that his testimony was taken so long after the event to which it relates, and that in the mean time nothing whatever had occurred to keep the event fresh in his recollection.

The criticism last made applies with almost equal force to the testimony of Mr. and Mrs. Feagans, and to the testimony of the notary, Steens. All of the witnesses undertake to repeat exactly what was said by the notary and themselves, to describe the position and location of each person in the room, and to give other details that would ordinarily fade from the recollection after the lapse of much less than six years, unless the transaction was one of those occurrences that make vivid and lasting impressions on the mind. The circumstance last alluded to leads me to distrust the accuracy of Rider's recollection in some of its details. Conceding that he was a visitor at defendant's house when the acknowledgment was taken, it appears to me doubtful whether, after the lapse of six years, nothing having occurred in the mean time to call the matter to his attention and fix it in his memory, he would be able to recollect distinctly that Mr. Feagans did or did not step out of the room for a few moments while the acknowledgment was being taken. A trifling incident of that character would naturally fade from the recollection of an ordinary person who was merely a casual observer of the transaction after

the lapse of a few years, or even a few months, though the general fact that he was present when certain papers were signed and acknowledged might be recalled.

It is unnecessary to pursue the subject further. I have said enough, no doubt, to indicate to counsel the view I have taken of the material parts of the testimony, and the grounds upon which I rest my decision. In a case of this character it is not enough that there is a preponderance of evidence in favor of the defendants if it should be conceded that there is such a preponderance in the present case. In the language of the state courts, which furnishes the rule of decision, the burden is on the defendants, and the proof furnished to overcome the certificate must be "clear, cogent, and convincing." It is a record that is assailed,—a record of an official act performed more than six years ago, and made cotemporaneously with the acts attested. The record is in due form of law, and it is aided by the presumption that always attends the acts of public officers, that the duty devolved on the officer was properly performed in the manner stated. In the present instance no effort is made to overcome it by circumstantial proof in its nature conclusive or very cogent; but the attempt is to impeach the record, solely by the recollection of witnesses, who, unless they are exempt from ordinary human frailty, can at best only have at this time an indistinct recollection of the material facts to which they testify. A decree must be entered for complainant. It is so ordered. Complainant's counsel may prepare and submit a decree for the court's approval. Interest will be allowed and computed on the bond at the rate of 10 per cent. per annum from maturity. Interest on the coupons will be computed at 6 per cent. per annum from their maturity. Interest on sums advanced to pay taxes will be allowed at the rate of 10 per cent. per annum.