MARY BURNS, as Administratrix, etc., of WILLIAM BURNS, Deceased, Respondent, v. JAMES PETHCAL, Appellant.

*One employee liable to another for misfeasance, not for non-feasance — contributory negligence.*

In an action brought by an administratrix of a laborer to recover the damages resulting from his death, caused by the caving in of the bank of a ditch being dug for a sewer, it was proved that the excavation had been made to such a depth at the place where the accident occurred that it became proper to shore up the sides; that on the day before the accident the defendant, who was the foreman in charge of the work for the contractor building the sewer, directed the men, whose duty it was to "curb" the sides of the ditch, to do so at this place, and also directed the men working there to go forward where the ditch was not so deep; that the shoring or curbing was not done on that day owing to rain; that on the next morning the defendant again directed the shoring to be done at this place, and ordered the laborers engaged in making the excavation to go forward, without specifying the place where they were to work; that the defendant had examined the bank of the ditch, as had others, on the morning of the accident, and found no indications of weakness at any point; that the plaintiff's intestate, who had done similar work before, began work on this sewer for the first time on the morning of the accident, and went to the point where he was injured without any direction from the defendant or any person to go to that particular spot, and began work there, although there was sufficient room for him to work where the sewer was of less depth and where he would not have been exposed to danger.

After the plaintiff's intestate had been working about twenty minutes the bank of the sewer caved in and caused the injuries from which he subsequently died. The defendant had no knowledge that any of the men were at work at this particular point, and experts were called who testified that in ground of the character of that surrounding this excavation it was safe to excavate to a greater depth than had been done here without shoring, and no evidence of weakness had been shown up to this time by the banks of the ditch anywhere in this neighborhood.

It was also proved to be the duty of the employees of defendant who were selected to do the "curbing" or shoring, to shore up the sides of the ditch whenever any of the men requested them to do so.

The negligence charged against the defendant, the foreman in charge of the work, was his failure to direct the plaintiff's intestate not to work at the particular point where he received his injury, or in not warning him of the danger of working there.

*Held,* that there was no such relation existing between the plaintiff's intestate and the defendant as authorized the bringing of this action; that they were, in fact, co-employees;

That a servant is not liable jointly with his master where the negligence of the servant is the omission of a duty devolved upon him purely from his employment, although he may be liable where he omits to perform a duty which rests upon him in his individual character, and one which the law imposes upon him independently of his employment ;

That the servant is in general liable for misfeasance but not for non-feasance, and that the defendant in this case was guilty only of an omission of duty devolved upon him, if at all, purely from his employment, and was not, therefore, liable in this action.

*Quære,* whether a plaintiff discharges the burden of showing that her intestate is free from contributory negligence where she shows that he did not discover a defect which he was as well qualified and competent to discover as the defendant, and whether under the facts proved it was error to refuse the defendant's motion for a nonsuit, and to submit the question of defendant's negligence to the jury.

APPEAL by the defendant, James Pethcal, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Broome on the 17th day of November, 1892, with notice of an intention to bring up for review on such appeal an order of the Supreme Court entered at the Broome County Special Term and Circuit on the 29th day of September, 1893, denying the defendant's motion for a new trial.

*Edmund O'Connor,* for the appellant.

*S. Mack Smith,* for the respondent.

MARTIN, J.:

This action was to recover damages for negligently causing the death of William Burns, the plaintiff's husband and intestate.

In June, 1892, Edward A. Matthews was engaged in building a sewer in the city of Binghamton, under a contract between himself and the city. The sewer commenced at Leroy street, running from thence northerly to within a short distance of Main street, and was something over 1,000 feet in length. Leroy street and Seminary avenue run parallel with Main. Murray street, through which the sewer was being constructed, runs at right angles with Main. The sewer was twenty-seven feet deep at Leroy street, and as it proceeded northerly towards Main was of less depth, so that at the point where the accident occurred it was to be only about sixteen feet deep.

The accident occurred on the 24th of June, 1892. At that time the sewer up to a man-hole, which was about six feet south of where the accident occurred, was about sixteen feet deep. It had also been opened and partially excavated for a distance of from twenty-five to fifty feet north of the man-hole, running from a depth of eight or ten feet on a gradual ascent to the surface of the ground at the northern extremity of the opening.

On the day before the accident, Dorsey and Stone, two laborers in Matthews' employ, who were engaged in excavating at the point where the accident occurred, were directed by the defendant, who was in the employ of Matthews as his foreman, to stop work at that point as a depth had been reached when it was proper to curb the opening. Curbing was usually put in at the depth of eight or nine feet, as plank eight feet in length were used for that purpose. Dorsey and Stone ceased work at that point, and went to work further north. Two other employees, Horton and Husted, had been selected by the contractor to do whatever curbing was necessary on the sewer, and the defendant, immediately after directing Dorsey and Stone to dig no deeper at that point, instructed Horton and Husted to curb the excavation at the place of the accident. As it rained in the afternoon, the men left the work and did not return until the following morning. The rain commenced about an hour or an hour and one-half after the defendant had directed the men not to dig any deeper at that place.

The plaintiff's intestate had worked for Matthews on another sewer which was being constructed in the city, had been engaged for four or five years previous to his death in working on the streets of various cities, and as the evidence tended to show, was a man above the average intelligence of such laborers, and for that reason had been previously selected by an inspector of the city to do work in excavating which was especially difficult. He commenced work on the Murray street sewer for the first time the morning of the accident. The defendant was there before seven o'clock, went down into the sewer at the place where the accident occurred, examined the bank and discovered nothing to indicate any danger or weakness in it. Another laborer, who had worked at that point the day before, went into the sewer that morning at the same point to clean out the soft mud, and saw nothing to indicate danger or weak-

ness in the walls of the ditch. After examining the sewer, and at about seven o'clock, the defendant set the men to work, taking a portion of them south and telling the rest to go forward, without directing any person to work at any particular place. The defendant went south, and after placing his men there, again directed Horton and Husted to put in the curbing at the place of the accident, to which they replied that they would go right along. The defendant then took his book, and began taking the men's time. The plaintiff's intestate went north of the man-hole to the point where he was injured without any direction from the defendant, or any other person, to work at that point, although there was sufficient room for him to work where the sewer was of less depth, and where he would not have been exposed to any danger. He had worked about twenty minutes when the west bank of the sewer caved in, and injured him so that he died the same day.

The defendant had no knowledge at the time that Burns or any of the men were at work in the sewer at the point where this accident occurred. The eastern bank of the sewer stood firm and upright after the accident. Experts who were thoroughly acquainted with this kind of excavation testified that the east and west banks were to all appearances alike; that nothing could be discovered that would disclose any reason why the caving of the west bank occurred; that it was regarded as entirely safe in that kind of soil to excavate to the depth of from eight to ten feet without curbing, and frequently excavations were made in such soil to the depth of fourteen feet without curbing. The soil for a distance of fifty feet south was apparently the same as at the place of the accident, and the men employed upon the work had been engaged in excavating there for two weeks without any evidence of weakness manifesting itself in either of the banks of the sewer when of the depth of eight or ten feet.

It was the duty and custom of Horton and Husted, who were employed to curb the sewer, to do so whenever any of the men requested it. The excavation was about five feet wide at the top, and narrower at the bottom. The soil at the place of the accident was at the top lightish gravel, coarse and hard; then followed a sort of loam or gravel; beneath that a lightish sand, then gravel again. The stratum of sand was something over a foot in depth. The

earth had been thrown out on the west bank except a little sand that was thrown out on the east. The plaintiff's evidence tended to show that the season had been a rainy one. This was contradicted. There was but little conflict in the evidence given on the trial.

At the close of the plaintiff's testimony the defendant moved for a nonsuit, which was denied. At the conclusion of the evidence the defendant again moved for a nonsuit, which was denied. To both of such rulings the defendant excepted. He then asked the court to direct the jury to render a verdict in favor of the defendant. This request was also denied, and the defendant excepted. The court submitted to the jury the question whether the defendant was negligent in not notifying Burns not to go to work at the particular point where he received his injuries, and in not warning him of the danger of working there. The defendant excepted to this portion of the charge.

No question is raised on this appeal as to any of the rulings of the trial court in the admission or rejection of evidence. Nor is it claimed by the appellant that the damages are excessive if the plaintiff was entitled to recover in this action. The broad question presented for determination on this appeal is whether the defendant was liable for the injury which resulted in the death of the plaintiff's intestate. The only theory upon which the plaintiff sought to recover in the court below, or upon which she now seeks to sustain the recovery had, is that the defendant was guilty of negligence which caused the injury resulting in the death of her intestate.

The only negligence charged by the plaintiff, or submitted to the jury by the court, as a basis for a recovery, was the omission of the defendant to direct the decedent not to go to work at the particular point where he received his injury, or in not warning him of the danger of working there. After a careful study of the evidence in this case we find it quite difficult to discover any actionable negligence upon the part of the defendant in this respect. The evidence shows quite conclusively that the bank where this slide occurred was apparently firm and that there was nothing to evince any weakness or imperfection in it, and that the defendant and other witnesses who had examined it before the injury, and afterwards, were unable to discover any indication of such weakness or danger.

Moreover, the defendant had given no directions to the decedent to go to this particular place to work. It was a place he selected for himself, and that, too, while there were other places where the sewer was of a less depth and where he might as well have worked if he had chosen. Under this evidence can it be said that it was sufficient to justify the submission to the jury of the question of the defendant's negligence, or if sufficient, was there any evidence showing that the plaintiff's intestate was free from contributory negligence? If the danger of this accident could have been discovered by the defendant by the exercise of reasonable care, why not by the decedent, if he exercised the same degree of care? Is it probable from the evidence that the defendant, by reason of his experience, or for any other reason, could have discovered it, when the decedent could not? Can it be that the defendant was negligent in not discovering the danger, and at the same time that the plaintiff has borne the burden of showing that her intestate was free from contributory negligence when he did not discover it, or if he did, remained at work there after such discovery?

We do not, however, deem it necessary to determine either of these questions, as there is another ground upon which we think the judgment must be reversed.

As to the relation existing between the plaintiff's intestate and the defendant, there can be no doubt. That they were both employees and servants of Mr. Matthews, the contractor, is established and not denied. Hence, the question is presented whether this action could be maintained by the plaintiff to recover for the death of her intestate against the defendant, who was a co-employee. This question was raised by the defendant's motion for a nonsuit made at the close of the plaintiff's evidence, and renewed after all the evidence in the case had been received. One of the grounds of the motion was that there was no such relation existing between two co-employees as authorized one to bring an action against the other on the ground of negligence.

The English authorities upon the question of the liability to third persons of a servant or agent for an act or omission performed or omitted by him, while engaged in the business of his master, are to the effect that the servant is liable for misfeasance, though the act be in obedience to the master's order, but that for mere non-feasance

or omission of duty, he is not liable to third persons, but only to the master, who alone is answerable to third persons for the servant's neglect.   (Smith's Law of Mast. & Serv. 415, and cases cited.)

We think it may be safely said that the English rule prevails generally in this and other States, notwithstanding the broad declarations of some judges and text writers to the effect that a servant is liable to third persons, injured by his negligence, either alone or jointly with his master.  (*Murray* v. *Usher*, 117 N. Y. 543; *Blackstock* v. *N. Y. & E. R. R. Co.*, 20 id. 48, 50; *Fort* v. *Whipple*, 11 Hun, 586; *Denny* v. *The Manhattan Co.*, 2 Den. 115; affd., 5 id. 639; *Carey* v. *Rochereau*, 16 Fed. Rep. 87; *Delaney* v. *Rochereau & Co.*, 34 La. Ann. 1123; *Reid* v. *Humber*, 49 Ga. 207; *Henshaw* v. *Noble*, 7 Ohio St. 226, 231; *Colvin* v. *Holbrook*, 2 N. Y. 126; *Montgomery County Bank* v. *Albany City Bank*, 7 id. 459; *Feltus* v. *Swan*, 62 Miss. 415; *Stephens* v. *Bacon*, 7 N. J. L. 1; *Labadie* v. *Hawley*, 61 Tex. 177; *Brown Paper Company* v. *Dean*, 123 Mass. 267; *Bell* v. *Josselyn*, 3 Gray [Mass.], 309, 311.)   The conflict in the authorities upon this question is more apparent than real.   It has arisen to a great extent from a failure to observe clearly the distinction between misfeasance and non-feasance, and from an omission to point out the fact that while a servant is liable in the one case, he is not in the other.   Disregarding this distinction, some judges and authors have stated in general terms that a servant is liable for his own negligence to a person injured thereby.   Such a statement is inaccurate and misleading.   Non-feasance is the omission of an act which a person ought to do.   Misfeasance is the improper doing of an act which a person might lawfully do.   If the duty omitted by the agent or servant devolved upon him purely from his agency or employment, his omission is only of a duty he owes his principal or master, and the master alone is liable.   While if the duty rests upon him in his individual character, and was one that the law imposed upon him independently of his agency or employment, then he is liable.   That such is the doctrine in this State, and that when applied to the case before us, it requires us to hold that this action cannot be maintained, is rendered quite manifest, we think, by an examination of the case of *Murray* v. *Usher* (*supra*).

In that case an action was brought by the plaintiff as administra-

tor to recover damages for alleged negligence causing the death of his intestate. The intestate was employed by the defendants Usher & Watkins as a day laborer in their sawmill. While so employed a platform upon which he was fell, and he received injuries causing his death. The defendant Lewis was their superintendent, having general charge of the business under their supervision, they giving directions from time to time. Lewis was instructed to look after the necessary repairs, and it was his duty to inspect the platform from time to time so as to see that it was kept in a safe condition. The plaintiff's evidence tended to show that he negligently omitted to perform this duty. In delivering the opinion in that case Judge ANDREWS said : " The judgment could not be maintained against the defendant Lewis if the case presented an exception raising the question that his neglect to perform the duty imposed on him by his employers to inspect and repair the platform from time to time, so as to keep it in a safe condition, did not render him liable for injury resulting to third persons from such neglect. Lewis and the plaintiff's intestate were co-servants of the owners of the mill, the former having the general charge and superintendence of the business under the supervision of the owners, who themselves gave directions from time to time. They instructed Lewis to look after the necessary repairs, and the evidence justifies the inference that, in respect to the platform, he omitted to perform his duty. The general rule of *respondeat superior* charges the master with liability for the servant's negligence in the master's business, causing injury to third persons. They may, in general, treat the acts of the servant as the acts of the master. But the agent or servant is himself liable as well as the master, where the act producing the injury, although committed in the master's business, is a direct trespass by the servant upon the person or property of another, or where he directs the tortious act. In such cases the fact that he is acting for another does not shield him from responsibility. The distinction is between misfeasance and non-feasance. For the former the servant is, in general, liable ; for the latter, not. The servant, as between himself and his master, is bound to serve him with fidelity and to perform the duties committed to him. An omission to perform them may subject third persons to harm and the master to damages. But the breach of the contract of service is a matter between the

master and servant alone, and the non-feasance of the servant caus-
ing injury to third persons is not, in general at least, a ground for a
civil action against the servant in their favor. (*Lane* v. *Cotton*, 12
Mod. 488; *Perkins* v. *Smith*, 1 Wils. 328; *Bennett* v. *Bayes*, 5 H.
& N. 391; Smith's Mast. & Serv. 216, and cases cited.)"

The *Murray* case, in all its essential particulars, so closely
resembles the case at bar as to make the doctrine of that case clearly
applicable and decisive of the question under consideration. We
are of the opinion that, as the defendant in this action was charged
only with non-feasance and not with misfeasance, and as the evi-
dence disclosed that the defendant was guilty only of an omission of
duty which devolved upon him, if at all, purely from his employ-
ment and not in his individual character, he was not, under the
principle of the authorities cited, liable for the injury to the plain-
tiff's intestate, and that the court erred in refusing to grant the
defendant's motion for a nonsuit.

The judgment and order must be reversed and a new trial granted,
with costs to abide the event.

HARDIN, P. J., and MERWIN, J., concurred.