## 93. SOUTHERN RAILWAY COMPANY *v.* ROWE.

1. Though the plaintiff, in a suit which had been properly removed from
   the State to the Federal court having concurrent jurisdiction of the
   cause of action in which suit was founded, voluntarily dismissed his
   case in the United States court, it was nevertheless his right to bring
   another suit on the same cause of action in the State court at any
   time within the statute of limitations applicable to such action.  This
   is true notwithstanding the damages in the second suit were laid in
   an amount which would prevent another removal to the Federal court.
2. A cause of action dismissed in the United States court may be renewed
   in the State court without payment of the costs accrued in the Fed-
   eral court.  Civil Code, § 5043, imposing a penalty upon those who non-

suit or dismiss their cases, is not applicable to cases in the United
States court. The words, "the plaintiff may recommence his suit,"
refer to a suit between the identical parties that were involved in a
former controversy in a court of the State of Georgia.

3. Where with apparent full knowledge of the existence of a ditch in a
public road, and without any emergency requiring it to be crossed, one
endeavors to pass such an excavation, he will be treated as having
voluntaily assumed all the usual risks incident to the attempt.

4. Where it is clear from the allegations of the petition that the plain-
tiff's injuries might have been avoided by the exercise of ordinary care
on his part, a proper demurrer to the petition should not be overruled.

5. Misfeasance is the improper doing of an act which the agent might
lawfully do. Where an agent fails to use reasonable care or diligence
in the performance of a duty, he will be personally responsible to a
third person who is injured. His liability in such cases is put upon
the ground that he is a wrong-doer and as such responsible.

6. The railway company and its section-boss may be jointly sued for
damages resulting from the negligent and improper discharge of his
duties by such boss. The boss as a wrong-doer is personally respon-
sible to the party injured by his misfeasance resulting from failure
to use reasonable care and diligence in the performance of his duty,
and the company is responsible for the misfeasance of its agent.

7. The section-boss and a railway company can be jointly sued when the
sole ground of the liability of the railroad company is the act of the
section-boss alone.

Action for damages, from city court of Hall county—Judge
Prior. January 30, 1906.

Argued February 11,—Decided May 9, 1907.

*John J. Strickland, Ed. Quillian,* for plaintiff in error.

*Reuben R. Arnold, Fletcher M. Johnson,* contra.

RUSSELL, J. The defendant in error brought an action against
the Southern Railway Company, in the city court of Hall County,
for the recovery of $10,000 damages, returnable to the February
term, 1906, of that court. This action, upon petition, was re-
moved to the circuit court of the United States, upon the ground
that the defendant was a non-resident and that the sum in con-
troversy exceeded $2,000. The order of removal was granted by
the judge of the city court of Hall county, February 2, 1906. The
case was duly transmitted to the circuit court of the United States
for the northern district of Georgia; and on March 3, 1906, the
case was stricken from the docket of that court, upon the ground
that there had been no proper service upon the defendant. The
dismissal was ordered by his honor Judge Newman, "without prej-

ndice to the plaintiff to bring the case over again." The action for $10,000 damages thus concluded was against the Southern Railway Company alone. On March 12, 1906, the defendant in error brought an action in the city court of Hall county against the Southern Railway Company and one A. C. Collier, a section-boss of the defendant company, alleging that the defendants had endamaged him in the sum of $10,000. The allegations of the petition, so far as pertinent to the negligence and misfeasance of the defendants, are as follows:

(4) "The defendant Collier is in the employment of the defendant the Southern Railway Company, as its section-boss, and the injury hereinafter described occurred on account of the joint negligence of the defendants, the negligence being that of the defendant Collier in the capacity of section-boss, and the railway company, in negligently cutting the ditch as hereinafter described. (5) At said Green's crossing the defendant had caused to be dug a deep ditch right across the public road, and over a part of said crossing after it left the railroad tracks, and on the defendant railway company's right of way, and upon the approach to said crossing. (7) The cutting of said ditch across said public road was done by and under the superintendence of the defendant Collier, acting on behalf of said Southern Railway Company; and the said ditch was about eight inches deep, and extended all the way across the road, and formed a dangerous obstruction to travel, and was negligence. (8) After cutting said ditch the said defendant Collier, acting as the agent of the defendant railway company, together with the section-forces under him, negligently left the same open and negligently failed to cover the same in any way with plank or other covering, so that travelers upon the highway with vehicles could pass. Said ditch was in the middle of the road, and formed a dangerous obstruction to travel. (10) The defendants were negligent in all the particulars aforesaid. Said ditch was cut upon the approach to the crossing, and was intended to run the water away from the track and road-bed of the defendant railway company. The cutting of said ditch was part of the railroad work for which said section-boss was employed, and was part of the defendant railway company's road work to keep its road-bed free from water and dampness and to prevent the water from ponding. But the said section-foreman was negligent in

that he cut said ditch too deep, and in that he failed to cover the same and failed to protect it, and left it open as a menace to travelers. (11) It is further shown that as to travelers upon said road the same was the only way provided for travel, and there was no way around said ditch."

The connection of the plaintiff—his actings and doings at the time of the alleged injury—is stated in paragraph nine of his petition, which is as follows: "On the 19th day of September, 1905, and about two o'clock in the afternoon, plaintiff was driving his wagon along said public road; and when the same got upon said crossing and road and reached the ditch, the effect of said wagon striking into said ditch, which was deep and abrupt, was to cause the pole of the wagon to break, and as it broke the wagon was partly wrecked, and plaintiff was thrown to the ground and caught in parts of the wagon, and the brake caught his leg, and he was thrown to the ground, his leg broken, and he was greatly and permanently injured."

At the appearance term the defendants demurred to the petition, and also filed a plea in abatement. The demurrer is as follows: "(1) There is no cause of action set out in plaintiff's petition. (2) Plaintiff shows by the allegations in his petition that if there was any negligence on the part of the defendants it was known to the plaintiff, and he could have avoided the same by the exercise of ordinary care. (3) By his petition plaintiff shows that the alleged ditch, which he says was negligently cut, was in full view, and the existence, condition, and depth known to him, and that he took the risk when he drove over it, and can not recover. (4) From plaintiff's petition it is apparent that plaintiff's injury was the result of an accident from causes unknown and from no negligence on the part of the defendants. (5) Plaintiff does not allege any act against these defendants which was joint; he alleges *no act against the defendant Collier,* except an act of mere negligence, and no act against the defendant the Southern Railway Company, except its own responsibility for the negligence of its employee, and alleges no overt act of misfeasance against either; and for that reason the joint action will not lie."

This demurrer was overruled. The defendants' plea in bar was, by consent, submitted to the presiding judge, who refused to sustain the same, holding that it was unnecessary that the costs due in

the United States circuit court for the northern district of Georgia in the former suit, which was dismissed, should be paid before the institution of the pending suit. Exception is taken to the order overruling the demurrer, and to the refusal of the court to sustain the plea in abatement. We shall first consider the questions presented by the exception to the judgment on the plea in bar.

1. In this case the plaintiff, J. E. Rowe, brought his suit each time for $10,000, so that evidently it was not his purpose to lay his damages in such an *amount* as would prevent removal to the Federal court. The joinder of Collier, the section-boss, a citizen of Georgia, under the ruling in the *Grizzle* case, 124 *Ga.* 737, in any event prevented a removal of the suit to the United States court. The decision of his honor Judge Prior, of the city court, in refusing to sustain the plea in bar, was right. In *McIver* v. *Fla. R. Co.,* 110 *Ga.* 223, the Supreme Court decided that, "Though the plaintiff in a suit which had been properly removed from a State to a Federal court having concurrent jurisdiction of the cause of action on which the suit was founded was nonsuited, or voluntary dismissed his case in the United States court, it was nevertheless his right to bring another suit on the same cause of action in the State court at any time within the statute of limitations applicable to such an action. The above is true notwithstanding in the second suit the damages were laid in an amount which would prevent another removal to the Federal court."

The plea in abatement was necessarily based on the idea that, because the costs were unpaid, the former suit was still pending; for the order of the United States judge in striking the former case from the docket expressly allowed the plaintiff (if the cause of action be the same) to recommence his action; and it was recommenced in six months. But in the case now before us the defendants were not the same as in the prior case. The Southern Railway Company was the sole defendant in the case dismissed in the United States court, and the Southern Railway Company and A. C. Collier are joint defendants in the case now under investigation. The plea in bar from its very nature was founded upon the maxim, "nemo debet bis vexari, si constat curiæ quod sit pro una et eadem causa." No one ought to be annoyed twice if it appears to the court that there is only one and the same cause of action. When we consider that the reason for the rule (that the

36

pendency of a prior suit is good cause of abatement) is that a second suit is unnecessary and therefore oppressive, it must be plain that the *parties* must be the same although the maxim only uses the term *cause of action*. It will not often happen, where the parties are *not* the same, that the cause of action can be said to be identical.

2. Was the payment of the costs due in the United States court, in the former suit brought by J. E. Rowe against the defendant Southern Railway Company, a necessary prerequisite to the prosecution of this case? Or, to state the question differently, is there ever any obligation on one whose action has been either voluntarily or involuntarily dismissed in the United States court to pay the costs therein accrued before recommencing practically the same cause of action in the State court? We think not. We state the question broadly, so that the answer will be general and apply to any and all cases brought in a foreign jurisdiction. The trial judge could well have overruled the plea in bar upon the ground that there was no identity of parties in the two cases and no identity of cause of action, but he put his ruling entirely upon the ground that it was unnecessary to pay the costs in the Federal court before recommencing the suit in the State court; and we think his decision in this regard was correct. Section 5043 of the Civil Code, which requires the payment of the costs in suits recommenced in the State courts, is a measure for the benefit of the State courts and their officers, and is perhaps required as a pledge of the good faith of the suitor. A cause of action dismissed in the United States court may be renewed in the State court without payment of the costs accrued in the Federal court, because the courts of the United States—as are those of a sister State—are courts of a foreign jurisdiction. The provisions of the Civil Code, §5043, imposing a penalty upon those who nonsuit or dismiss their cases are not applicable to cases in the United States court. The words, "the plaintiff may recommence his suit," refer to a suit between the identical parties that were involved in a former controversy in a Georgia court. In so far as anything said in the *Cox* case (*Cox* v. *R. Co.,* 68 *Ga.* 448) may appear to rule to the contrary it was obiter and "is not binding as authority." *McIver* v. *R. Co.,* 110 *Ga.* 227. With the payment or collection of the costs in the courts of foreign jurisdictions our courts are not

concerned.   The non-payment of·the costs in the United States
court was therefore immaterial, and the finding of the judge of the
city court of Hall county against the plea was correct.   The Fed-
eral courts derive their power and jurisdiction from a different
sovereignty from that of the State courts.   "In that sense they
are foreign jurisdictions in like manner as the courts of different
States are foreign to each other; therefore the pendency of a prior
suit in a Federal court will not abate a suit subsequently brought
in a State court between the same parties and for the same cause
of action, although the two courts may sit in the same State and
have the same territorial jurisdiction."   International & G. N. R.
Co. *v.* Barton, 57 S. W. 292.   Therefore, even if the prior suit
had been between identically the same parties and had still been
pending in the United States court, the plea in bar would not have
been good.   See 1 Cyc. 36, 2; Cooper *v.* Newell, 173 U. S. 355
(19 Sup. Ct. 506, 43 L. ed. 808); Gordon *v.* Gilfoil, 99 U. S. 169
(25 L. ed. 383); Hyde *v.* Stone, 20 How. 170 (15 L. ed. 874);
The Kalorama, 10 Wall. 204 (19 L. ed. 944); Stanton *v.* Embry,
93 U. S. 548 (23 L. ed. 983); Insurance Co. *v.* Harris, 96 U. S.
331 (24 L. ed. 959); Short *v.* Hepburn, 21 C. C. A. 252, 75 Fed.
113; Latham *v.* Chaffee (C. C.), 7 Fed. 520; Logan *v.* Greenlaw
(C. C.), 12 Fed. 10; Weaver *v.* Field (C. C.), 16 Fed. 22; Hurst
*v.* Everett (C. C.), 21 Fed. 218; Briggs *v.* Stroud (C. C.), 58
Fed. 720; Coe *v.* Aiken (C. C.), 50 Fed. 640; Pierce *v.* Feagans
(C. C.), 39 Fed. 587; Beekman *v.* Railway Co. (C. C.), 35 Fed.
3; Rejall *v.* Greenhood (C. C.), 60 Fed. 786; Merritt *v.* Barge, 24
C. C. A. 530, 79 Fed. 228; Zimmerman *v.* So Relle, 25 C. C. A.
518, 80 Fed. 419; Hughes *v.* Green, 28 C. C. A. 537; Bank *v.*
Bonney, 101 N. Y. 173, 4 N. E. 322; Litchfield *v.* Brooklyn, 34
N. Y. Supp. 1090; Checkley *v.* Steamship Co., 60 How. Pr. 511;·
Wood *v.* Lake, 13 Wis. 84; Wurtz *v.* Hart, 13 Iowa, 518; Caine *v.*
Railway Co. (Wash.), 41 Pac. 904.

3, 4.   According to the allegations of the ninth paragraph of
this petition, the plaintiff is not entitled to recover from the de-
fendants for any injury he may have received, because the re-
sult (if not directly traceable to his own negligence) could have
been prevented by the use of ordinary care and diligence for his
own protection.   The plaintiff says he was riding along the road,
and when he reached the ditch and drove into it (instead of even

pausing to examine its size and depth) it appears that he drove right on and was thrown out of his wagon and his leg was broken. No reason is given why he could not see it, nor is it stated that he could not or did not see the danger. There was nothing, so far as appears in the record, which prevented him from stopping his team and thereby avoiding the ditch, and no emergency is suggested which rendered the crossing of the ditch imperative. We do not know the purpose of the plaintiff's drive; but it is plain from the allegations of the petition, that, whether it was business or pleasure, it can only be inferred that he knowingly, deliberately, and (if the ditch was as dangerous as alleged) recklessly assumed all the risk incident to his undertaking. The allegations of the petition make a case very similar, but certainly not as strong a case upon the facts as that of *Sheats* v. *Rome,* 92 *Ga.* 535, in which the judgment dismissing the petition because it set forth no cause of action was affirmed. In the *Sheats* case the Supreme Court held, that, "Although it was gross negligence for the municipal authorities of a city, after causing a ditch five feet wide and three or four feet deep to be cut across a public sidewalk, to leave it open, in this condition for several weeks, a female who was perfectly aware of the existence, width, and depth of the ditch, and who either attempted to jump across it, or stepped into the bottom of it on a rock and tried to step out, and was thus injured, has no right of action against the city. It is clear that by the exercise of ordinary care on her part the injury might have been avoided."

In *Kent* v. *So. Bell Tel. Co.,* 120 *Ga.* 980, where the greater portion of the danger was concealed by the peculiar manner in which the ditch was cut and was not apparent to the plaintiff, the Supreme Court held that the petition set forth a cause of action, because these allegations took it out of the rule declared in *Sheats* v. *Rome,* supra, and *Cook* v. *Atlanta,* 94 *Ga.* 613, but reaffirmed the doctrine of those cases by saying that the plaintiff could not recover if "she knew what was before her; with full knowledge she assumed the risk, and could not put the injurious consequences upon another, even though that other had been at fault in creating the condition out of which her damage arose. But the petition does not make such a case." And in the first headnote the court held, that "Where, with full knowledge of the existence of a ditch in a highway, and without any emergency requiring it to be

crossed, one endeavors to pass over the excavation, he will be treated as having voluntarily assumed all the usual risks incident to the attempt." We are not prepared to hold that a comparison can be instituted dependent on sex between the degree of care chargeable to man as compared with woman, but it is worthy of note that the plaintiffs in both the *Sheals* and the *Kent* cases were women; and if there be a presumption either way, it would seem that we should expect to find more coolness, discretion, and prudence in man than in woman. And while, in our opinion, all issues of negligence or diligence should be referred to the jury, still where, under the allegations of the petition itself, the contributory negligence of the plaintiff is so apparent and so complete as to render a recovery a legal impossibility, a timely demurrer should be sustained, and taxpayers and litigants be saved from useless expense and annoyance. Where with apparent full knowledge of the existence of a ditch in a public road, and without any emergency requiring it to be crossed, one endeavors to pass such an excavation, he will be treated as having voluntarily assumed all the usual risks incident to the attempt. We think, therefore, that the court erred in not sustaining the demurrer upon its first three grounds. It is apparent from the allegations of the petition, which we have quoted, that the plaintiff could, by the exercise of ordinary diligence, have avoided the injury of which he complains. There is no allegation that on account of darkness or blindness, or for any other reason, the plaintiff or any other person could not have seen the ditch cut by the defendant company and its section-boss; nor is any emergency requiring the crossing of the ditch alleged. The judgment upon the demurrer should have been controlled by the decision in *Kent* v. *Tel. Co.* supra, and numerous other decisions of our Supreme Court to the same effect.

5, 6, 7. In the fifth paragraph of the demurrer it was insisted specially that the petition should be dismissed because no act is alleged against these defendants which was joint, no action alleged against the defendant Collier, except an act of mere negligence, and no act against the defendant the Southern Railway Company, except its responsibility for the negligence of its own employee; that the allegations of the petition make, at best, only a case of nonfeasance against the defendants, and do not charge any act of misfeasance against either defendant, and consequently the joint

action will not lie. In the case of *Southern Ry. Co.* v. *Grizzle,* 124 *Ga.* 735, in which the judgment of the writer (who was then upon the circuit bench) upon the same points as are involved in the present demurrer, was affirmed by the Supreme Court, every phase of the questions involved is so lucidly presented in the opinion which was delivered by Justice Cobb, and the decision is so amply supported by authorities, as to leave no open question as to what is the law. Measuring the petition by the requirements of the decision in the *Grizzle* case and its citations, it can well withstand the fifth paragraph of the demurrer. The learned counsel for plaintiff in error asserts in his brief that "no case has yet gone far enough to hold a railroad and its employee jointly liable for an act of this character, where there was no claim of there being any joint action or any misfeasance on the part of either defendant," and contends that even the decision in the *Grizzle* case, supra, confirms this statement. We can not concur in this view. That the employer may be jointly liable for the misfeasance of an employee was decided in *Central Ry. Co.* v. *Brown,* 113 *Ga.* 414. In that case it was held that the railway company and a passenger with whom the conductor participated in an assault on the plaintiff could be jointly sued. And yet the liability of the company was entirely due to the act of the conductor. It is insisted, however, that while an act, such as an assault, is necessarily misfeasance, the allegations in the petition now under consideration, and especially that the section-boss failed to cover over the ditch, only make a case of nonfeasance, and that an agent is not liable to third persons for mere nonfeasance. It must be remembered that misfeasance may be negligence merely. One distinction between nonfeasance and misfeasance, and that misfeasance may be due to neglect, is aptly pointed out by Judge Virgin in delivering the opinion in Gregor v. Cady, 82 Me. 131 (17 Am. St. R. 466), quoting from Smith's note in Coggs v. Bernard, Smith's Leading Cases (6th Am. ed.), 355, "A distinction exists between nonfeasance and misfeasance; the one being a total omission to do an act which one gratuitously promises to do, and the other a culpable neglect in the execution of the act. If a party makes a gratuitous engagement, actually enters upon the execution of the business, and does it amiss, through the want of due care, by which danger ensues to the other party, an action will

lie for misfeasance." In Ellis *v.* McNaughtor, 15 Am. St. R. 308, 76 Mich. 237, 242, and Lough *v.* Davis, 94 Am. St. R. 848, 30 Wash. 204, it was held that misfeasance may involve, to some extent, the idea of not doing, as where an agent, while engaged in the performance of his undertaking, does not do something which it is his duty to do under the circumstances, as, for instance, when he does not exercise that care which a due regard for the right of the other party requires. Such negligence as would be actionable in any relation of life is misfeasance by not doing. Mechem on Ag. §572. Another distinction drawn by Metcalf, J., in Bell *v.* Josselyn, 69 Mass. 309 (63 Am. Dec. 742) is, that "nonfeasance is the omission of an act which a person ought to do; misfeasance is the improper doing of an act which a person might lawfully do." In so far as the digging of the ditch in this case is concerned (if the plaintiff were not precluded from recovery by his own apparent negligence), it might be lawful to dig it; but the section-boss would be guilty of misfeasance for which the employer would be liable if it were improperly dug or improperly guarded, or if, without regard of the right of others, it was negligently left in such condition as to endanger the public or passers by. Misfeasance is the omitting to do an act *as* it should be done. Coite *v.* Lynes, 33 Conn. 109, 114; Minkler *v.* State, 14 Neb. 181; Ill. Cen. Ry. Co. *v.* Foulks, 191 Ill. 57; Commonwealth *v.* Williams, 79 Ky. 47, 42 Am. Rep. 204; Burns *v.* Petchal, 75 Hun, 437 (27 N. Y. Supp. 499, 503). The ruling in Osborn *v.* Morgan, 130 Mass. 102, is squarely in point, and demonstrates that the allegations of negligence in the petition made a case of misfeasance for which the servant would be liable, and for which, consequently, the employer would be liable also. Says Chief Justice Gray, delivering the opinion in the Osborn case: "If the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons, which may be the natural consequence of his acts; and he can not, by abandoning its execution midway and leaving things in a dangerous condition, exempt himself from liability to any person who suffers injury by reason of his having so left them without proper safeguards. This is not nonfeasance or doing nothing, but it is misfeasance, doing improperly."

As a result of our investigation we unhesitatingly conclude that the petition was not subject to demurrer upon the ground that no misfeasance was alleged, nor because the railway company and its section-boss were not properly joined. So far as that portion of the demurrer is concerned, the trial judge did not err in overruling it. We summarize: Misfeasance is the improper doing of an act which the agent might lawfully do. Where an agent fails to use reasonable care or diligence in the performance of a duty, he will be personally responsible to a third person who is injured. His liability in such cases is put upon the ground that he is a wrong-doer and, as such, responsible. *Southern Ry. Co.* v. *Grizzle,* 124 *Ga.* 737.

This court has also held (in the *Miller* case, cited below), that a corporation may be sued jointly with its employee. So the railway company and its section-boss may be jointly sued for damages resulting from the negligent and improper discharge of his duties by such boss. The boss, as a wrong-doer, is personally responsible to the party injured by his misfeasance resulting from failure to use reasonable care and diligence in the performance of his duty, and the company is responsible for the misfeasance of its agent. The section-boss and a railway company can be sued when the sole ground of the liability of the railroad company is the act of the section-boss alone. See *Ry. Co.* v. *Miller,* 1 *Ga. App.* 616; Morrison *v.* Ry. Co., 74 Pac. 1064; Howe *v.* R. Co., 60 L. R. A. 949; Able *v.* Ry. Co., 73 S. C. 173; Chesapeake & O. R. Co. *v.* Dixon, 179 U. S. 131.

But, for the reasons already stated, we think the court erred in overruling the first, second, and third paragraphs of the demurrer, as it plainly appears from the allegations of the petition (which indeed should be most strongly construed against the petitioner) that the exercise of ordinary diligence by the plaintiff, as construed by the Supreme Court, would have obviated the injury of which he complains, in that it does not appear that he did not know of the ditch and could not see its condition, or allege any unusual emergency making it necessary for him to take the risk of crossing such a ditch. The petition avers that the road he was travelling was, "as to travelers upon said road," the only way, but gives no reason why plaintiff had to travel. The judgment of the lower court in overruling the demurrer is therefore        *Reversed.*