[No. 4717.   Decided December 29, 1903.]

Sewall P. Stone *et al., Respondents,* v. City of Seattle, *Appellant.*[1]

Municipal Corporations—Streets—Negligence—Evidence as to Other Sidewalks.   In an action for personal injuries caused by stepping into a small hole at the edge of the sidewalk, testimony on the part of the city that the sidewalk was built upon the same plan and that the opening was the same as generally adopted in many other sidewalks throughout the city, is inadmissible.

Same.   Neither could the city prove that the sidewalk was like the sidewalks in many other cities.

Same—Necessity of Hole in Sidewalk.   Neither could the city prove that the opening was necessary for the purpose of disposing of surface water, since it is a matter of common knowledge that surface water may be otherwise disposed of.

Damages—Expert Testimony—Medical Works—Correctness of Statement not Pertaining to Medical Science—Reflection on Honesty.   In an action for personal injuries it is proper to exclude the testimony of a physician that a medical work correctly states that patients with traumatic neurosis, injured in railroad accidents, usually recover after the settlement of pending litigation, as it does not pertain to medical science, and is merely a reflection upon individual honesty.

Damages—Personal Injuries—Verdict—When Excessive.   A verdict for $9,000 for personal injuries through stepping into a hole in the sidewalk, sustained by a woman fifty-five years of age, engaged in nursing and general housework, held excessive and reduced to the sum of $6,000.

Appeal from a judgment of the superior court for King county, Bell, J., entered December 6, 1902, upon the verdict of a jury rendered in favor of the plaintiff for the sum of $9,000 for personal injuries.   Affirmed upon the condition of remitting $3,000.

[1]Reported in 74 Pac. 808.

*M. Gilliam* and *William Parmerlee,* for appellant, contended *inter alia,* that it was competent to show a general or common method of constructing the walks as bearing on defendant's negligence, and the proportionate obligation of plaintiff to use special care. *Heiss v. Lancaster,* 203 Pa. St. 260, 52 Atl. 201; *Benedict v. Union Ag. Soc.,* 74 Vt. 91, 52 Atl. 110; *Birmingham etc. R. Co. v. Alexander,* 93 Ala. 133, 9 South. 925; *Crane v. Missouri Pac. R. Co.,* 87 Mo. 588; *Shea v. Lowell,* 90 Mass. 136; *Augusta v. Hafers,* 61 Ga. 48, 34 Am. Rep. 95; *Evans v. Keystone Gas Co.,* 148 N. Y. 112, 42 N. E. 513, 30 L. R. A. 651. The city had to provide for the surface water. *Los Angeles Cem. Ass'n v. Los Angeles,* 103 Cal. 461, 37 Pac. 375; *Haynes v. Burlington,* 38 Vt. 350; *Sprague v. Worcester,* 13 Gray (Mass.) 193; *McClure v. Red Wing,* 28 Minn. 186, 9 N. W. 767. The verdict in this case was excessive. *Chicago v. Langlass,* 52 Ill. 256, 4 Am. Rep. 603; *Kennedy v. St. Paul City R. Co.,* 59 Minn. 45, 60 N. W. 810; *Johnson v. St. Paul City R. Co.,* 67 Minn. 260, 69 N. W. 900; *Bronson v. Forty-Second St. etc. R. Co.,* 67 Hun 649, 21 N. Y. Supp. 695; *Bell v. Globe Lumber Co.,* 107 La. An. 725, 31 South. 994; *Budge v. Morgan's etc. Co.,* 108 La. An. 349, 32 South. 535; *Peri v. New York Cent. R. Co.,* 87 Hun 499, 34 N. Y. Supp. 1009; *Illinois Cent. R. Co. v. Welch,* 52 Ill. 183, 4 Am. Rep. 593; *Pfeffer v. Buffalo R. Co.,* 4 Misc. (N. Y.) 465, 24 N. Y. Supp. 490; *Vowell v. Issaquah Coal Co.,* 31 Wash. 103, 71 Pac. 725; *Torske v. Commonwealth L. Co.,* 86 Minn. 276, 90 N. W. 532. See the following cases of "neuresthenia" where verdicts for $10,000 in each instance were reduced to $4,000. *Becker v. Albany R.,* 35 N. Y. App. Div. 46, 54 N. Y. Supp. 395; *Lockwood v. R. Co.* (Com. Pl.), 7 N. Y. Supp. 663.

*Noon & Noon* and *John F. Dore,* for respondents. The customary negligence of the city is no defense. *Koester v. City,* 34 Iowa 41; *Propsom v. Leatham,* 80 Wis. 608, 50 N. W. 586; *Johnson v. First Nat. Bank,* 79 Wis. 414, 48 N. W. 712; *Christensen v. Union Trunk Line,* 6 Wash. 75, 32 Pac. 1018; *Pennsylvania R. Co. v. Aiken,* 130 Pa. St. 380, 18 Atl. 619; *Colf v. Chicago etc. R. Co.,* 87 Wis. 273, 58 N. W. 408; *Rumpel v. Oregon etc. R. Co.* (Idaho), 35 Pac. 700, 22 L. R. A. 725; *Ilwaco R. etc. Co. v. Hedrick,* 1 Wash. 446, 25 Pac. 335, 22 Am. St. 169; *Rooney v. Sewall etc. Co.,* 161 Mass. 153, 36 N. E. 789; *Ford v. Mt. Tom etc. Co.,* 172 Mass. 544, 52 N. E. 1065, 48 L. R. A. 96; *Cent. R. Co. v. De Bray,* 71 Ga. 406; *Gulf etc. R. Co. v. Evanisch,* 61 Tex. 3. In the following cases it has been held that evidence as to usual methods in other towns is inadmissable. *Kidder v. Dunstable,* 11 Gray (Mass.) 342; *Hinckley v. Barnstable,* 109 Mass. 126; *Schoonmaker v. Wilbraham,* 110 Mass. 134; *Marvin v. New Bedford,* 158 Mass. 464, 33 N. E. 605; *Littleton v. Richardson,* 34 N. H. 179, 66 Am. Dec. 759; *Hubbard v. Concord,* 35 N. H. 52, 69 Am. Dec. 520; *Malloy v. Township of Walker,* 77 Mich. 448, 43 N. W. 1012, 6 L. R. A. 695; *Koester v. Ottumwa,* 34 Iowa 41; *Champaign v. Patterson,* 50 Ill. 61; *Kenworthy v. Ironton,* 41 Wis. 647; *Perkins v. Fond du Lac,* 34 Wis. 435; *Temperance Hall Asso. v. Giles,* 33 N. J. L. 520; *Tripp v. Lyman,* 37 Me. 250; *Bauer v. Indianapolis,* 99 Ind. 56. The courts are not justified in disturbing a verdict for unliquidated damages as excessive in amount unless it appears that it was awarded through passion or prejudice. *McNamara v. King,* 7 Ill. (2 Gil.) 432; *Aldrich v. Palmer,* 24 Cal. 513; *Wheaton v. North Beach etc. R. Co.,* 36 Cal. 590; *Wilson v. Fitch,* 41 Cal. 363; Hayne, New Trials and Appeals, § 95; *Lake Erie etc. R.*

*Co. v. Acres,* 108 Ind. 548, 9 N. E. 453. The damages
in this case were not excessive. *Ohio etc. R. Co. v. Judy,*
120 Ind. 397, 22 N. E. 252; *Greene v. Minneapolis etc.
R. Co.,* 31 Minn. 248, 17 N. W. 378; *Harker v. Burling-
ton etc. R. Co.,* 88 Iowa 409, 55 N. W. 316; *Kansas
City v. Manning,* 50 Kan. 373, 31 Pac. 1104; *Hinton v.
Cream City R. Co.,* 65 Wis. 323, 27 N. W. 147; *Bitner
v. Utah etc. R. Co.,* 4 Utah 502, 11 Pac. 620; *Hanlon v.
Missouri Pac. R. Co.,* 104 Mo. 381, 16 S. W. 233; *Rush
v. Spokane etc. R. Co.,* 23 Wash. 501, 63 Pac. 500; *Uren
v. Golden Tun. Min. Co.,* 24 Wash. 261, 64 Pac. 174;
*Sutton v. Snohomish,* 11 Wash. 24, 39 Pac. 273, 48 Am.
St. 847; *Durham v. Spokane,* 27 Wash. 615, 68 Pac. 383;
*Smith v. Spokane,* 16 Wash. 403, 47 Pac. 888.

DUNBAR, J.—This action was instituted by the re-
spondents Sewall P. Stone and Mary E. Stone, his wife,
for damages for personal injuries received by the wife
on the 4th day of October, 1900, by reason of her step-
ping into a hole in one of the streets of the city of Seattle.
At the junction of Kilbourne and Bowman avenues, the
outer plank of the cross walk was some ten inches short,
leaving an opening which was at that time some four or
five inches deep, and which was of sufficient size for a
person to step into. The accident occurred at night.
Near this opening stood a large electric light pole, from
which an electric arc light was suspended in such a man-
ner as to cast the shadow of the pole over the opening.
The case was tried to a jury, a verdict of $9,000 was
returned, and judgment entered for that amount, from
which judgment this appeal is taken.

This is the second time that this case appears in this
court. At the first trial, nonsuit was granted on the
ground that there was a total failure of proof as to any

negligence on the part of the city. Thereafter respondents moved for a new trial. That motion was also granted and a new trial ordered, and from the order granting a new trial, the city appealed. This court sustained the trial court, and the cause was remanded for trial (30 Wash. 65, 70 Pac. 249), which was had, and resulted in the judgment aforesaid.

It is alleged that the court erred in sustaining respondents' objection to competent evidence offered by appellant. The offer by the city attorney was as follows:

"We offer to prove that all the sidewalks in the city—in this part of the city especially—built along about that time, such as a sidewalk in this case, were built upon the same plan of construction as this sidewalk was built, and that this sidewalk and this opening is no different than hundreds of other sidewalks and openings in the city built upon that plan of construction."

This testimony was objected to, and the objection we think was properly sustained. In addition to the fact that the city could not avoid liability by proving that it had systematically been guilty of negligence in the construction of its walks and streets, this question, it seems to us, was determined upon a former trial of this case, where it was decided that the city could not escape liability for injury from a defective sidewalk because the defect was part of the original plan of construction.

The next offer was to prove by a witness that he had visited many of the large cities of the United States, and was familiar with the plans and construction of sidewalks such as the sidewalk in question, and that in those places they were constructed like the sidewalk in question. We think that objection to this testimony was also properly sustained. The only real question at issue here, on this branch of the case, was whether the city was guilty of

maintaining the sidewalk in a negligent manner, and its liability could in no wise be affected by the fact that other cities might, or might not, be guilty of the same negligence.

The appellant also offered to prove that it was necessary to have this opening in the sidewalk for the purpose of disposing of surface water, and that the opening was for the purpose of cleaning out the drain and keeping it open. We think objection to this testimony was also properly sustained. This court has uniformly announced in its decisions that the test of the liability of a city is whether or not it constructs and maintains its walks in a reasonably safe manner. This is a duty it owes to pedestrians, who have a right to travel on the walks. Besides, it is a matter of such common and universal knowledge that surface water could be disposed of by grates and other small openings which would be harmless, that it was not proper to admit testimony which would simply tend to confuse the minds of the jurors, and lead them from the pertinent questions in issue.

It is also insisted that the court erred in sustaining objection to questions asked Dr. Faulk on cross-examination. Dr. Faulk had testified as a medical expert on behalf of respondents, and the following colloquy occurred:

"Q. I will ask you now if you are acquainted with the work on medicine known as the 'Practice of Medicine,' by Osler. A. Yes sir. Q. Do you consider it one of the standard works? A. Yes sir. Q. Now, if Osler lays down the proposition that 'A majority of patients with traumatic neurosis recover in railway cases. So long as litigation is pending and the patient is in the hands of lawyers the symptoms usually persist. Settlement is often the starting point of a speedy and perfect recovery with a full return to health, after presenting the most aggravating symptoms with complete disability of three to five years' duration.' I will ask you if that is a correct an-

nouncement of medical science relating to this disease that you have described."

It would seem plain that the only effect that a statement of this kind could have on a jury would be to prejudice it against claims of this character. Even if it were pertinent, it is but hearsay testimony, and on a subject entirely disconnected with the matters at issue, and does not pertain in any way to the medical profession or science of medicine, but is simply a reflection upon the honesty of individuals generally who meet with accidents caused by railroads.

We are unable to discover any prejudicial error in the instructions of the court, or in its refusal to instruct. The instructions given fairly stated the law and embraced all the law which should have been given in the cause. Nor do we think that the alleged action of the court in his demeanor towards the city attorney was of such a serious nature as would warrant a reversal of this cause.

We are satisfied, however, from an examination of the whole record, that the jury was not warranted in decreeing this respondent damages in the sum of $9,000. She was a woman fifty-five years old at the time of the accident, engaged in nursing and housekeeping. What was said by this court in *Vowell v. Issaquah Coal Co.*, 31 Wash. 103, 71 Pac. 725, might be substantially repeated here; viz., that the earning capacity of men and women decreases after middle life, and usually decreases very rapidly. Here, as there, this woman was at the time of life when her physical vigor was on the wane. No other means of obtaining a livelihood or making money was attributed to her than as a nurse and housekeeper; and considering all the testimony in the case that seems to us to bear the impress of reason, we think $6,000 would have been a liberal allowance for the jury to have awarded.

Instead, however, of reversing the cause for this error, and imposing the costs of a new trial upon both parties, the judgment of the court will be that, if the respondents, within twenty days from the filing of this opinion, remit from the judgment obtained the amount of $3,000, the judgment as so amended will be affirmed. Otherwise the judgment will be reversed, and a new trial granted.

FULLERTON, C. J., and HADLEY, MOUNT, and ANDERS, JJ., concur.