[No. 4873.  Decided January 11, 1904.]

EVERETT A. MORRISON, *Respondent,* v. NORTHERN PACIFIC RAILWAY COMPANY *et al., Appellants.*[1]

MASTER AND SERVANT—PARTIES—JOINDER IN ACTION FOR NEGLIGENCE OF SERVANT.  An action for tortious negligence may be maintained jointly against a railroad company and the conductor of its train for injuries resulting from the negligent act of the conductor.

EVIDENCE—HARMLESS ERROR—RULE OF RAILROAD COMPANY— FACT OTHERWISE ESTABLISHED.  The erroneous admission in evidence of a rule of a railroad company from which the jury would be led to believe that a conductor had the right to direct the movement of trains in passing, as senior conductor, is harmless where the conductor testifies on behalf of the party objecting that he had such right in any event from the position of the trains in question.

TRIAL—SPECIAL VERDICT—DISCRETION.  The submission of special interrogatories to the jury is discretionary, and is not reviewable on appeal.

RAILROADS—NEGLIGENCE IN PASSING OF TRAINS—FELLOW SERVANTS—ENGINEER OR CONDUCTOR IN CHARGE OF THE MOVEMENT— INSTRUCTIONS.  When a number of freight trains had orders to pass at a certain siding which was not long enough to hold the

[1]Reported in 74 Pac. 1064.

trains going in either direction, necessitating as claimed, that
they "saw by," and a brakeman on an eastbound train is injured
in a collision caused by the alleged negligence of the conductor
on a westbound train in attempting such operation by running
his train past the switch before the arrival of the second east-
bound train; and it is claimed by the defendants that the engi-
neer on the westbound train was responsible instead of the con-
ductor in that he had control of the train, held:

(1)   That an instruction that said westbound engineer was
a fellow servant of plaintiff is properly refused on the theory
that, if he was responsible in having the control of the operation
of the trains in passing, he was a vice-principal.

(2)   That the defendants' view of the law relative to the re-
sponsibilities of said engineer was given in any event by an in-
struction to the effect that the plaintiff could not recover in case
said engineer had the right to direct the movement of the train
and the collision was due to his negligence.

(3)   That an instruction to the effect that the plaintiff could
not recover if a flagman was sent out and the collision was due
to the negligence of the eastbound engineer in failing to stop
his train after being flagged, because there was no allegation of
negligence on the part of the eastbound train crew, is favorable
to the defendants and presents the case within the limitations
established by the complaint.

VERDICT—DAMAGES FOR PERSONAL INJURIES—WHEN EXCESSIVE.
A verdict for $12,500 for injuries sustained by a brakeman in
a collision is excessive where there was no loss of limb or dis-
figuration, and no certainty of permanent injury, but only a
weakness of the attachment of the tissue and muscles of the
pelvic bone, which did not disqualify plaintiff from pursuing
other callings which he had previously pursued; and the same
should be set aside unless reduced to $8,000.

Appeal from a judgment of the superior court for Spo-
kane county, Belt, J., entered April 28, 1903, upon the
verdict of a jury for $12,500 damages for personal in-
juries sustained by a brakeman in a collision of freight
trains in attempting to "saw by" a short siding.   Affirmed
on condition of remitting $4,500.

*Stephens & Bunn,* for appellants, to the point that, the
undisputed testimony having established that the east-

bound engineer could, by the exercise of ordinary care, have easily stopped his train in time to have avoided the collision after being flagged, his negligence was the proximate cause of the injury, cited: *Lynn Gas & Elec. Co. v. Meriden Fire Ins. Co.*, 158 Mass. 570, 33 N. E. 690, 20 L. R. A. 297, 35 Am. St. 540; *Hoover v. Beech Creek R. Co.*, 154 Pa. St. 362, 26 Atl. 315; *Evansville etc. R. Co. v. Tohill*, 143 Ind. 49, 41 N. E. 709, 42 N. E. 352; *Trewatha v. Buchanan etc. Min. Co.*, 96 Cal. 494, 28 Pac. 571, 31 Pac. 561; *Lutz v. Atlantic etc. R. Co.*, 6 N. M. 496, 30 Pac. 912, 53 Am. & Eng. R. R. Cases, 478; *Kansas etc. R. Co. v. Dye*, 70 Fed. 24; *Fowler v. Chicago etc. R. Co.*, 61 Wis. 159, 21 N. W. 40, 17 Am. & Eng. R. R. Cases 536; *Enright v. Toledo etc. R. Co.*, 93 Mich. 409, 53 N. W. 536; *Deming v. Merchants etc. Co.*, 90 Tenn. 306, 13 L. R. A. 518; *Pullman Palace Car Co. v. Laach*, 143 Ill. 242, 32 N. E. 285, 18 L. R. A. 215.

*Merritt & Merritt* and *Barnes & Lattimer*, for respondent.

Dunbar, J.—Action for personal damages by respondent, who was a brakeman on one of the appellant company's trains running between the cities of Spokane and Ellensburg. He was acting as brakeman on an eastbound train known as "Extra 144." There was another freight train just ahead of Extra 144, going east toward North Yakima. Freight train Extra 143, with two other freight trains, was going west toward Ellensburg. The appellant and defendant J. E. Deuster was the conductor of westbound train Extra 143. Train Extra 144, on which plaintiff and respondent was brakeman, had the right of track at passing points over train Extra 143 westbound.

These two trains were ordered to meet and pass each other at the siding at Selah station. The other eastbound

train, Extra 146, which was just ahead of Extra 144, had similar orders regarding the meeting at Selah. This train stopped on the main line at that station. It had to stop there, for the reason that westbound freight Extra 143 had pulled into the siding at Selah before the arrival of the eastbound train, and had pulled up as far as possible towards the west switch, the other two westbound trains following on to the siding as far as they could go. Only a portion of one of them, however, could obtain footing on the siding. The other portion, and the third westbound freight train, "hung out" on the main line beyond the east switch. The siding was what is known as a sixty-car siding.

It is contended by the appellant that the first eastbound train was of such length that, when it came on the main line and stopped between the switches of the siding, the second eastbound train, upon which respondent was a brakeman, could not get in behind it on the main line between the switches so as to allow the westbound trains to pass out westwardly, and that it became necessary, in order that these trains might pass each other, to "saw by" —that is, before the arrival at Selah of the second east-bound train, the westbound trains would have to pull out on the main line westerly from the west switch, so as to allow the first eastbound train to pass before the second eastbound train arrived; and then, when the first eastbound train had passed, the westbound trains would back up easterly, and permit the second eastbound train to come in on to the main line and stand between the switches, when the westbound trains could proceed on their way, clearing the main track on the east so that the eastbound train could proceed on its way.

It is the respondent's contention, that there was no occasion for any "saw by," for the reason that there was room

on the main line opposite the siding for both of the eastbound trains; and that, if the conductor had waited until Extra 144 had come into the station, the way would have been cleared for the westbound trains; and that, even if this were not true, the way attempted was not the only way in which these trains could pass each other; but that, if they had waited until Extra 144, the second eastbound train, had arrived, the westbound trains could have proceeded as they did, allowing the first eastbound train to pass forward on to the main line east of the siding, then back on to the switch and establish the same position that they had in the first place until the second eastbound train, or Extra 144, would take its place upon the main track opposite the switch, when the westbound trains would proceed westward, leaving the main track on the east so that Extra 144 might have proceeded on its way.

Before the Extra 144 arrived, however, the westbound train started west, and had got on to the main line when Extra 144 came round a curve, collided with Extra 143, and, by reason of such collision, the plaintiff sustained the injuries complained of. In his action he joined, as defendant with the railway company, J. E. Deuster, who was conductor of the leading westbound train. The trial of the case resulted in a verdict for plaintiff in the sum of $12,500, against both defendants, and both defendants appeal from such judgment.

The complaint alleges, that the defendant Deuster, by virtue of his being conductor of the westbound train, had charge and control thereof, and of all persons employed thereon; that, by the rules of the defendant company, Extra 144 eastbound had the superior right of passing points over westbound trains; that the westbound trains, or those in charge thereof, had knowledge of the schedule on which the eastbound train was running, and that it was

their duty upon their arrival at Selah to clear the main track for the passing or meeting of eastbound trains; that said conductor Deuster negligently permitted his train, Extra 143 westbound, to run past the side track at the town of Selah, causing the collision before mentioned.

In response to a motion for a bill of particulars, in which motion the defendants required the respondent to state fully wherein the conductor, J. E. Deuster, on Extra 143 westbound, was careless and negligent, the respondent answered as follows: "Said defendant J. E. Deuster was careless and negligent in permitting his train to run by and proceed beyond said side track at the town of Selah, at the point where said collision occurred."

The respective separate answers of the defendant Deuster and the company denied that the conductor Deuster had complete control over train Extra 143; denied that he was wholly responsible for the movements of said train, and alleged that the engineer upon said train had complete control over the movements thereof, through the management of his engine; admitted that train Extra 143 ran past the side track for about one-eighth of a mile, and that it collided with train Extra 144 (the train upon which plaintiff was acting as brakeman); but alleged that it was necessary and proper at that time and place, and that it was good and proper railroading, then and there for Extra 143 to pass the said town of Selah for some distance, for the purpose of permitting the train which it would meet there to "saw by," proper signals having been given to Extra 144; that said trains could not pass each other in any other way; and the other ordinary allegations in an answer to a complaint of this character.

The defendants each demurred to the complaint for the reason that the same did not state facts sufficient to constitute a cause of action; that there was a misjoinder of

parties defendant; and that there was a misjoinder of causes of action; and the overruling of this demurrer by the court is the basis of the first assignment of errors; the appellants contending that there is a misjoinder of parties defendant—that the railroad company and the conductor could not be joined in the same action, under the rule announced by this court in *Clark v. Great Northern Railroad Co.,* 31 Wash. 658, 72 Pac. 477.

An examination of that case shows that it is not in point. That was an action for a breach of a carrier's contract to transport plaintiff as a passenger, and an action for a tort arising from the alleged unlawful use of excessive force in ejecting plaintiff from the train, and it was held that, under § 4942, Bal. Code (providing that the plaintiff may unite several causes of action in the same complaint when they arise out of contract express or implied, or injuries with or without force to the person), these causes of action could not be united, on the ground that actions *ex contractu* could not be united with actions *ex delicto.* So that it will be seen that the rule announced in this case has no bearing upon the questions at issue. This question was, however, brought squarely before this court in the case of *Howe v. Northern Pac. R. Co.,* 30 Wash. 569, 70 Pac. 1100, 60 L. R. A. 949, where, after an examination of the authorities, which were conceded to be somewhat conflicting, the court decided that an action for tortious negligence might be maintained against the master and his employee jointly, where the injury was caused by the act of the latter.

There is but one objection to the testimony made by appellants in this case, and that is expressed in assignment No. 7, viz: that the court erred in overruling the defendants' objection to the introduction of rule 309 in rebuttal. Rule 309 is as follows: "In case several trains

meet at a station and it is found necessary to saw by or do other work, directions will be given in order to expedite preference train by senior conductor." The objection was based upon the assertion that the rule did not relate to any of the issues of the case, or to the circumstances which prevailed at the time of the collision; the contention being that the rule only applied to occasions where there was a preference train, and that the jury would conclude that Deuster, under the rules of the company, was the one to direct the action of the trains at the time and place in question, and that they were thereby very greatly prejudiced by the introduction of this rule. But, according to the testimony of the appellant Deuster himself, whether or not he was acting as senior conductor, he had a right to direct the operation of the trains. He testified [on page 80] that the condition of affairs at the Selah station was what is known in railroading as a "jack pot," and that, when it became necessary to "saw by," the man who occupied the position that he (appellant Deuster) did would have the right to say to conductors of the other trains what was to be done there with reference to "sawing by." So that it seems to us that the introduction of the rule under the circumstances was entirely harmless.

Certain special interrogatories were requested by the appellants to be submitted by the court to the jury, which were refused, and error is based upon such refusal. In addition to the fact that it seems to us that the evidence did not justify the submission of such interrogatories, this court has decided, in *Pencil v. Home Ins. Co.*, 3 Wash. 485, 28 Pac. 1031; *Bailey v. Tacoma Traction Co.*, 16 Wash. 48, 47 Pac. 241; and *Walker v. McNeill*, 17 Wash. 582, 50 Pac. 518, that the question of the submission to the jury of special interrogatories is addressed to the discretion of the trial court, and is not reviewable on appeal.

It is alleged also that the court erred in refusing to give instruction No. 2, requested by appellants, which was as follows:

"You are instructed that the engineer of train No. 143, which collided with the train upon which plaintiff was brakeman at the time and place of the accident, was a fellow servant of the plaintiff, and if you find from the evidence that the carelessness of the engineer of said train No. 143 caused the collision in which plaintiff was injured, then the plaintiff cannot recover and your verdict must be for the defendant Northern Pacific Railroad Company."

If the evidence established the fact that the engineer was in control of train No. 143 to such an extent that he was permitted to order its movements, then such control and direction would constitute him a vice-principal of the railroad company, for it is the controlling and directing power and authority which determines whether or not he is the *alter ego* of the company, rather than any particular name by which he is called; and, if he had such authority, then he would not be a fellow servant, and the company could not escape responsibility by pleading his acts. But, in any event, the law in relation to the powers and duties and responsibilities of the engineer was given by the court in its seventh instruction, in the following language:

"If you find from the evidence that the collision and consequent injury to the plaintiff was caused by the carelessness of the engineer of train No. 143 in pulling his train out on to the line just west of Selah station too close behind the flagman who had been sent out, and if you further find that the conductor of the train—that is, the defendant Deuster—did not order or signal such engineer to pull his train out when he did, and that if said conductor by reason of the belief that a flagman had been sent out ahead a proper distance, and the conductor Deuster, as conductor of train No. 143 under the rules and regulations of the company, had no authority to direct the engineer as

to the movement of the train at that time, but that the engineer had a right under such rules and regulations to decide as to the movement of the train at that time, then you should find for the defendant."

So that it would seem that, even if the appellants' view of the law were correct, and that the defendant company's responsibilities could be transferred to the engineer by giving him powers and authority which are usually exercised by conductors, that view of the law was presented to the jury. And so with the other instructions asked by the appellants. All the instructions which properly stated the law were given by the court in another form.

The court in its sixth instruction stated the law favorably for the appellants when it said:

"If you find from the evidence that the engineer of train 144 was flagged just prior to the collision, and that after seeing such flag he could have by the exercise of ordinary care brought his train to a standstill before it collided with train 143; that is, if by using the air brakes and the means for stopping his train, he could have stopped it after being flagged and thus avoided the collision and consequent injury, and that after seeing the flag the engineer of train No. 144 carelessly and negligently failed to stop his train and this caused the collision and injury to plaintiff, and that such carelessness and negligence was the direct and proximate cause of the collision and injury, then the plaintiff cannot recover in this case, because there is no allegation or claim in the complaint that the injury to plaintiff was the result of the carelessness or negligence of the train crew of train Extra 144, but, as we have stated, the negligence charged is the negligence of the defendant Deuster, as conductor of train 143, in pulling his train on to the main track as alleged in the complaint."

So that the whole question of responsibility and proximate cause was presented to the jury under the limitations which had been established by the language of the complaint. And under the instructions of the court, which

were full and complete, all the other questions which are discussed by the appellants were settled by the jury.

There seems to be no merit in the assignments of error in relation to the manner in which the jury were instructed concerning the form of their required answer to special interrogatories, or in regard to the actions of the jurors in any respect.

It is earnestly contended, however, and we think with some justice, that the verdict in this case is excessive. There is no loss of limb and no disfiguration, the injury which was proven being an injury to the tissue and a weakness of the attachment of the muscles of the pelvic bone; the doctors who attended respondent being unable to testify that there was any permanent injury to the kidneys, and their testimony in relation to the permanency of the injury to the muscles was, to a great degree, speculative. There seems to be no certainty that the injury will be permanent, and, in any event, according to the testimony of respondent, he is still qualified to pursue other callings than that of a brakeman, which he testified he had pursued before. We think, under all the circumstances shown by the testimony, that $12,500 is an excessive verdict, a result more from a consideration by the jury of the large amount sued for, viz., $28,215, than from a consideration of the damage actually shown. We think that, under the testimony, considering the expense of medical treatment and the disability shown, $8,000 would have been as large a verdict as should have been returned.

The judgment of this court is that, if, within thirty days from the filing of this opinion, the plaintiff remit from the judgment appealed from the sum of $4,500, the judgment will be approved; otherwise it will be reversed.

FULLERTON, C. J., and HADLEY, ANDERS, and MOUNT, JJ., concur.