[No. 5338. Decided November 13, 1906.]

HERBERT L. WILLIAMS, *Respondent*, v. SPOKANE FALLS & NORTHERN RAILWAY COMPANY, *Appellant*.[1]

APPEAL—ASSIGNMENT OF ERROR—SUFFICIENCY. A brief on appeal sufficiently assigns as error that the verdict was excessive where that was one of the grounds of a motion for a new trial, and the brief assigned as error the overruling of such motion, although the excessiveness of the verdict was not argued in the brief.

SAME—BRIEFS. Argument in a brief against the correctness of admitting testimony or errors tending to excite the jury to passion and prejudice, and to bring in a large verdict, sufficiently points out error assigned as to the excessiveness of the verdict.

APPEAL—REVIEW—DECISION—VERDICTS—REDUCTION. The supreme court may order a new trial, conditional upon the reduction of an excessive verdict, regardless of whether the jury were influenced by passion or prejudice.

APPEAL—DECISION—REASONS FOR REVERSAL. It cannot be objected that a judgment of reversal does not adopt all the contentions of appellant, and the supreme court may deny a request for an absolute reversal, and grant it on condition of refusal to accept a reduction of an excessive verdict.

APPEAL — REVIEW — VERDICTS — REDUCTION — DECISION. Where a judgment is clearly excessive and substantial justice will be done by granting a new trial on condition that a reduction of the judgment is not accepted, the judgment should not be upheld through a technical construction of a rule of court or an unfair construction of an admission by counsel in oral argument.

DUNBAR, J., dissenting.

Appeal from a judgment of the superior court for Spokane county, Richardson, J., entered May 27, 1904, upon the verdict of a jury for $33,000 damages for personal injuries. Affirmed on condition of remitting $13,000.

*M. J. Gordon* and *C. A. Murray*, for appellant.

*Graves & Graves*, for respondent.

[1]Reported in 87 Pac. 491.

On Respondent's Petition for Rehearing.

Root, J.—The respondent, by one of his attorneys, has filed a printed petition for a rehearing on the last opinion of the court in this cause. 42 Wash. 597, 84 Pac. 1129. Appellant has moved to strike this petition, upon the grounds: (1) That a petition for rehearing is not permissible after one rehearing has been had; (2) that the language of the petition is discourteous and disrespectful toward the court. Appellant waived the first ground. As to the second, said attorney appeared before this court and explicitly stated that he had not intended to reflect upon, or be discourteous to, the court or any member thereof. In view of this disavowal, and the fact that to strike the petition would be to punish the client, we have decided to deny the motion and to consider the petition upon its merits.

The main contention, and the essence of respondent's argument, is that this court has passed upon a question not properly before it in that we have reduced a verdict and judgment from $33,000 to $20,000 when the question of its being excessive was not before us.

The contention has no basis of support either in fact or law. After the verdict was rendered the appellant interposed a motion for a new trial based upon several grounds, three of them being as follows:

"5. Excessive damages, appearing to have been given under the influence of passion and prejudice. 6. Error in the assessment of the amount of recovery, the same being too large and against the weight of the evidence. 7. Insufficiency of the evidence to justify the verdict, and that the verdict is against the law."

It will thus be seen that the question of the excessiveness of the verdict was expressly presented to the trial court. One of these grounds was waived in this court, but two of them were never waived, unless by an implication which we deem unjustifiable. That court denied the motion—thereby ruling

that the verdict was not excessive, and its action was assigned as error by appellant in its opening brief on appeal in the following language, "The court erred in overruling appellant's motion for a new trial." This was appellant's twelfth assignment of error. It will thus be seen that the question was squarely presented to this court.

In one of his written arguments, upon the question of rehearing, respondent employed the following language: "As counsel state, one ground of defendant's motion for a new trial was that the verdict was excessive. If it was, error was committed by the trial court in denying the motion." This court found that the verdict *was* excessive. Hence, it found that the trial court committed error in denying the motion for a new trial; and as that error was plainly assigned by appellant's opening brief, it became this court's duty to correct the same in the manner it deemed most conducive to the ends of justice. Respondent quotes the rule of court requiring the pointing out of errors. It being admitted by him, as just quoted, that if the verdict was excessive the trial court committed error in denying the motion for a new trial, it follows logically and irresistibly that the error *was* "pointed out" when appellant, in its opening brief, assigned as error the only ruling which the trial court ever made upon the question of excessive verdict—its denial of the motion for a new trial. The rule of court mentioned was intended for the convenience of the court. If we are satisfied with the manner in which it is complied with in a given case, there would seem to be little cause for complaint by any party to the litigation, unless such party be thereby misled, which is not the case here.

The inference to be drawn from respondent's present argument is that the question of excessive verdict was not "presented" or "pointed out", inasmuch as it was not argued in the opening brief. Even if the question were not argued, that would not prevent appellant from having it reviewed.

Neither the statute, nor any rule of court, requires an argument to be made. That is not the essential, legal method by which an error is "pointed out" or an issue "presented." It is the function of the "assignment of error" to "point out" the errors relied on. The only ruling as to the amount of the verdict charged as error against the trial court was its order denying the motion for a new trial, which is "pointed out" in the "assignments of error," and thereby brought to this court's attention. Whether or not it should have been argued, was entirely optional with appellant. The "assignments of error" presented the issue as by the statute and rule of court required. This court then had jurisdiction to deal with it.

As a matter of fact, however, the question of excessive verdict *was* argued by appellant's counsel. In the motion for new trial, certain rulings of the trial court were assigned as a basis for a new trial. Some of these were alleged upon appeal to have been very prejudicial to appellant; and, if they were erroneous, must have had a strong tendency toward inducing the jury to return an excessive verdict. Some of these, and other matters, were argued by appellant in its brief at much length. On page 18 of its opening brief this language appears: "The testimony could serve no other purpose than that of misleading and confusing the jury and establishing a false standard for estimating respondent's damages." It will be seen that this argument bore directly upon the question of damages. At pages 22 and 26 of said brief appellant said: "We submit that it was grossly improper to permit this cross-examination. The plain purpose of it, and doubtless its effect, was to put the witness before the jury as a person who had violated a positive statute, as well as the ethics of his profession, by giving testimony in the case. . . . To say that such a course was not prejudicial would be to ignore human experience and the dictates of common sense." These observations were

made relative to the cross-examination of a physician who
was a witness for appellant. It is plain that if appellant's
contention was sound, the error complained of must have
tended to arouse passion and prejudice on the part of the
jury and to have placed before them improper evidence bear-
ing very materially upon the amount of the verdict.

After devoting fifty pages of its brief to discussing the
various errors assigned—most of which bore directly and
solely upon matters affecting the amount of the verdict—the
appellant said: "For the foregoing reasons the court erred
in overruling appellant's motion for a new trial." In other
words, appellant submitted this assignment upon the argu-
ments already made. We are cited to no authority requiring
anything further. We believe there is none. In a case of
this character little argument is necessary on the question of
the amount of recovery. The court must examine the evi-
dence. When this is done and the other questions are
argued, but little help is gained from extended argument as
to the amount. It is entirely different from a case where ar-
gument is essential to an understanding of one or more of
the errors "pointed out" in assignments of error. In any
event, there is no statute or rule making argument a prereq-
uisite to jurisdiction over an issue presented by the assign-
ments of error.

Where the assignments of error merely go to a question of
procedure, or bear solely upon a right to *any* recovery what-
ever, and there is no separate assignment as to the amount
of recovery, respondent's contention might possibly be up-
held. But this is not such a case  Here the *principal* ques-
tion was as to the amount of the verdict. The matters com-
plained of and covered by the 2d, 3d, 4th, and 12th assign-
ments—and there were several matters under each—bore upon
the question of the amount, as well as upon other questions,
and to say that the entire question of amount was waived be-
cause one ground of the motion for a new trial—it contained

several—was not contended for, would be to announce a doctrine both void of reason and unsupported by authority. Even if the matters in any one assignment of error did not in themselves justify a new trial, yet, taken with those involved in all of the other assignments bearing upon the size of the verdict, they might very properly, and in this case did, furnish good reason to believe the verdict excessive and to justify its modification. Counsel says this court has refused in certain cases to pass upon questions not plainly pointed out; but he has not cited a case of such refusal where the record and facts were like those of this case, and for the very good reason that there is none.

If the 12th assignment of error had not been made, the question of the amount of the verdict was properly before the court under other assignments—especially two, three and four, which were directed against the trial court's action in overruling objections made to numerous questions asked witnesses by respondent's counsel. If the trial court was in error as to any of these matters, it was an error well calculated to induce the jury to bring in a large verdict. Most of the questions involved bore upon the nature and extent of respondent's injuries and the conduct of a physician and others toward him after the injury. Many of the things covered by these three assignments were matters that undoubtedly inflamed, and otherwise improperly influenced the jury and contributed to the large verdict. If this court believed these three assignments, or any of them, to be well taken, and to constitute prejudicial error, it had jurisdiction to reverse the case. Respondent does not deny this. If the court, because of these alleged errors, had the power to reverse the judgment of the trial court, it, of course, had the power to modify that judgment. The greater includes the less. A reversal would set aside the entire judgment; a modification sets aside only part of it. The statute [Bal. Code, § 6521 (P. C. § 1069)], says that "the supreme court

may affirm, reverse or *modify* any such judgment or order appealed from, as to any or all the parties, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had." It will thus be seen that if this court had jurisdiction to reverse the judgment, it had likewise jurisdiction to modify it. If it had the power to grant a new trial absolutely, it had the power to grant it conditionally. The same assignments, the same facts, and the same statutes that give this court jurisdiction to reverse a judgment, give it jurisdiction to modify it or to direct a new trial if the successful party does not remit a portion of his judgment.

While this court could arbitrarily have reduced the amount of the judgment and terminated the litigation, it has not done so. It remands the case with directions for a new trial unless respondent consents to the reduction. This court has left the matter optional with respondent as to whether he shall accept the $20,000. If he feels that his injuries merit a larger amount, he is given another chance. If he is so badly injured that $20,000 will not adequately compensate him, perhaps he may be able to show it on another trial. Possibly he may be able to produce better evidence than he had before. He is not compelled to accept the $20,000. He is at liberty to go before another jury and if he can show that he is entitled to a greater sum it will doubtless be awarded him.

Respondent calls attention to the fact that this court stated in its first opinion that no question was made as to the verdict being excessive. True; and we deemed that a misconception which justified a rehearing. The purpose of a petition for a rehearing is to call the court's attention to what the petitioner believes to have been an error in its former opinion. When the court believes there is a probability that it has made a mistake, it is its duty to grant the rehearing; and, if then convinced of its error, to rectify the same. That is exactly what we have done. Appellant filed its petition

24—44 WASH.

for rehearing. Respondent was requested to answer, which he did with an elaborate brief, and a rehearing was ordered. Respondent filed another elaborate brief, and the present counsel reargued the matter orally, besides submitting additional typewritten observations. After a consideration of all these and appellant's briefs, and a careful and thorough examination of the evidence, the court rendered the opinion now complained of.

Notwithstanding his three printed briefs and his one typewritten, and two oral arguments, counsel for respondent urges that his client has had no opportunity to be heard upon the question of the amount of the verdict. In his petition and argument now before us he says: "It was assumed in plaintiff's brief (naturally, I think) that the amount of the verdict was not questioned." Let us see how this statement comports with those in his former briefs. In his brief filed in answer to appellant's opening brief, some fifteen pages are devoted to the character and extent of respondent's injuries and to matters which appellant contended were calculated to inflame or improperly influence the jury. The character and extent of respondent's injuries had no bearing upon any question involved except the amount of damages. Then why did respondent's counsel discuss these matters if the only issue they affected was not in the case. Able attorneys do not usually waste fifteen pages of printed brief on a subject-matter not before the court. In their first brief, at page 42, respondent's attorneys use this language: "A verdict for $50,000, the whole amount demanded, would have been amply sustained by the evidence. Surely defendant has no right to complain of the $33,000 verdict which was rendered." Does this sound as though counsel believed the question of the amount was not involved? When they say, as just quoted, that appellant "has no right to complain of the $33,000 verdict," does that look as if they had no idea that appellant *was* complaining? On page 40 of said brief,

after speaking of the amount of the verdict, respondent's counsel say: "If this be true, defendant cannot complain of error relating to fixing the *measure of damages*." In the light of these statements, how can it be said they did not know that the question of the amount of recovery was involved and made no argument touching it? On page 19 of its reply brief, appellant uses this language: ". . . and had they (the jury) believed him, manifestly this monstrous verdict of $33,000 could never have been rendered." Can anyone read this and believe that appellant was making no complaint about the amount of the verdict? On page 29 of said brief appellant says: "We submit that the errors complained of were each and all prejudicial." This does not read as if appellant was waiving any of them.

In its petition for rehearing at page 2, appellant assigned its first ground in the following language: "1. Mistake on the part of the court in assuming, at the top of page 5 of the opinion, 'That the amount of judgment is not called in question.'" Does this not show plainly that appellant *was* calling in question the amount of the judgment? On page 10 of the same brief, appellant says: "How can it be told how much was added to the verdict because of the shameful spectacle improperly permitted in the cross-examination of Dr. Potter?" A similar remark follows as to the matters covered by another assignment.

In preparing and presenting their numerous briefs and arguments, respondent's counsel knew of the matter which we have just quoted from appellant's petition for rehearing—knew that appellant was urging that the amount of the verdict and judgment was excessive and was in question. Knowing this, they had the privilege and right to argue the matter. If they did not wish to do so, the fault (if any) is not with the court. Their briefs, however, show that the question was argued. To be sure, they filed a typewritten protest against appellant's raising the question in one of

its briefs on rehearing, and they make the statement, directly and indirectly in other of their briefs, that the question of amount is not before the court; but it is impossible to read the many pages of their briefs bearing upon the question of amount, and urging the right of this court to reduce excessive judgments, without seeing that the question was treated as being involved and that the court was being shown that it had the power to reduce the amount rather than grant a reversal and a new trial unconditionally.

Respondent's counsel appear to think that appellant waived any question of excessive verdict because its attorney stated that he would not urge it upon the ground of "passion or prejudice," but insisted upon a reversal by reason of the errors alleged in the other assignments.   As these latter covered the other, it was practically a "distinction without a difference," the means by which any passion or prejudice or other wrongful influence was produced being immaterial. It could make little difference to appellant whether the verdict was excessive from one cause or another, the material question being whether, as a matter of fact, it *was* excessive. In his petition for rehearing, appellant's counsel expressly and emphatically urges that the judgment was excessive.  But respondent's counsel insists that we had no right or power to reduce the judgment and that our action has overturned all precedent.   We could readily justify our procedure by citation to many authorities, but it is necessary only to refer to the argument of respondent's counsel himself and the authorities he cites.

At page 3 of his brief, in answer to appellant's petition for rehearing, he uses this language: "This court, in common with the majority of the courts of the United States, has always conceded to the courts the power to reduce verdicts when they are deemed excessive, *even though they are not charged to have been induced by passion or prejudice.*" And in support of this statement he cites, with others, the

following cases: *Arkansas Val. Land etc. Co. v. Mann*, 130 U. S. 69, 9 Sup. Ct. 458, 32 L. Ed. 854, where the verdict was reduced from $39,958.33 to $17,125; *McDonough v. Great Northern R. Co.*, 15 Wash. 244, 46 Pac. 334, judgment reduced from $7,500 to $5,000; *Walker v. McNeill*, 17 Wash. 582, 50 Pac. 518, reduction from $40,000 to $25,000; *McDannald v. Washington etc. R. Co.*, 31 Wash. 585, 72 Pac. 481, reduced from $10,000 to $4,000; *Stone v. Seattle*, 33 Wash. 644, 74 Pac. 808, reduction from $9,000 to $6,000; *Morrison v. Northern Pac. R. Co.*, 34 Wash. 70, 74 Pac. 1064, reduced from $12,500 to $8,000; *Gallamore v. Olympia*, 34 Wash. 379, 75 Pac. 978, $8,040 to $5,000; *Halverson v. Seattle Electric Co.*, 35 Wash. 600, 77 Pac. 1059, $20,000 to $10,000.

He could have cited many more from this and other appellate courts. In the same brief at page 11 he used this language: " . . . the decisions of this court *require the courts* to weigh the evidence and pass upon the question *whether the verdict returned is excessive*, and, if in their opinion it is, *to require its reduction.*" This is exactly what we have done. At page 13 of the same brief, he says: "But this court has said so repeatedly that discretion lies with the trial or appellate court to reduce a verdict deemed excessive, and that *not because of passion or prejudice but because of its view of the evidence*," etc. At page forty-two of the same brief, this language is used: "Unless this court has for years been usurping an authority it did not possess, . . . an appeal to it to reduce an excessive verdict, *however induced*, would have been effective."

These portions of his brief, and many others that might be quoted, emphatically uphold the very procedure this court has followed in this case. Then again in his brief on the first rehearing, at page thirteen, he says: "Had the error of which defendant complains not been committed, the jury might, and should have awarded plaintiff $41,020," etc. This

would seem to be an admission that an error *was* committed of which defendant (appellant) *did* complain and that it was an error *affecting the amount of recovery*. In the same brief, at page 55, he says: "Year in and year out, during the whole period of its existence, has this court, upon the challenge of the defendant, reviewed the evidence in personal injury cases with respect to the amount of damages allowed, and in many, very many cases, *in the exercise of its discretion to grant a new trial,* required the remission of a portion of the verdict as a condition to denying a new trial." And at page fifty-six of the same brief, he says: " . . . In view of the many cases in which this court has required a remission from the verdict as a condition to denying a new trial, and in which *neither in the appellant's brief nor in the opinion of the court,* is there any suggestion that the verdict was induced by passion or prejudice, it is idle to contend that the power of the courts to require a remission from the verdict is limited to cases where the verdict appears to have been induced by passion or prejudice." He was then resisting appellant's contention for an absolute reversal and new trial.

It is difficult to read said brief, especially from pages 54 to 58, and escape the conclusion that respondent's attorneys were inviting a reduction instead of an absolute reversal in case an affirmance could not be had—not expressly, of course, but by necessary implication arising from the language used. The correctness of these statements quoted from the briefs of respondent cannot be questioned and they are as applicable now as when written. They show that juries cannot be treated as infallible and that the court may and should correct their errors.

If passion or prejudice on the part of the jury is shown, the court may reverse the judgment or reduce it even if there is no other error in the case. On the other hand, if no passion or prejudice is shown, but errors as to admission or exclusion of evidence or as to instructions or as to any other

matter appear, or if matters, permissible for certain purposes, are shown which this court believes had the effect of unduly augmenting the amount of the verdict, this court may give relief to the party injured by said matters; and that relief may be by an absolute reversal, a modification of the judgment or an order for a new trial conditioned upon the successful party declining to remit such a portion as may be indicated. This authority is given by the statute and, as above admitted by respondent, has always been observed in the practice in this court. No valid reason is suggested why our action in following the usual practice was not justifiable in this case.

Respondent's counsel insists that appellant's counsel stated upon the first oral argument that "No question is made, as to the amount of the verdict rendered." Appellant's counsel emphatically denies this and states that what he did say was that he would not urge that the verdict was excessive *by reason of passion or prejudice of the jury.* Appellant's version being in accord with its position as maintained in all of his briefs, we are constrained to believe that respondent's counsel may have misunderstood or failed to accurately remember the statement of opposing counsel. In fact, in his brief in answer to appellant's petition for rehearing, respondent's counsel, after using the expression above quoted, employs this language: "The writer, at this length of time, would not be sure those were the identical words employed," thus admitting that he does not remember accurately although he avers that it was substantially as above quoted. Listening to an oral argument, it is easy to miss a portion of a statement and it is not at all uncommon to forget, or be mistaken as to, a statement made a year previously. Appellant's counsel in all of his briefs was contending that errors were made by which improper cross-examination of witnesses was permitted in the presence of the jury and improper evidence submitted to them, all of which was calculated to, and

did, make the jury bring in the large verdict. That an appellant on an appeal from such a verdict should make no complaint about the size thereof, would be a most remarkable omission. If it had no complaint to make of the amount of the verdict, why did it appeal? If the judgment had been nominal or for a small sum, it is inconceivable that any appeal would have been taken.

It is suggested that our decision is not in accord with some of the contentions of appellant's counsel. Because a case is decided in favor of a party, it does not follow that the court must accept the views of the attorney for such party upon all matters discussed. Appellant's counsel urged that errors had been committed by the trial court and that his client was entitled to an absolute reversal on account thereof. He did not believe that adequate relief could be accorded by anything less. We became satisfied that an injustice had been done his client; but we believed that he was not entitled to all he asked. Therefore we declined to reverse the case absolutely, but gave respondent his choice of reducing his judgment or taking a new trial. Because we required $13,000 to be remitted or a new trial to be granted, instead of granting a new trial absolutely, which would have wiped out the entire $33,000, we cannot see that we are inconsistent or that respondent's counsel has any cause of complaint.

A court's decision in a given case should be construed in the light of the issues and the contentions therein. In passing upon assigments of error 2, 3 and 4, we did not announce that we found them without merit; but we held in effect that appellant's contention that they justified an absolute reversal could not be sustained. We believed there were matters covered by those assignments that well merited appellant's complaint; but we believed they went to the amount of the verdict and that the wrong they accomplished could be adequately remedied by a reduction of the judgment and that an unconditional reversal was not necessary. For instance, the evi-

·dence of respondent as to visits of the appellant's claim agent, we held to be admissible for one purpose *only*. But while we held it admissible for that purpose, it unavoidably served another purpose, and we could not shut our eyes to the fact that it was well calculated to impel the jury toward an excessive verdict. Then as to the cross-examination of Dr. Potter, we believed there were conditions that prevented this, in itself, from being reversible error; yet no one could possibly doubt its potent influence upon the amount of the verdict. If any technical objection is urged to the wording of the opinion, a sufficient answer is that we were aiming at substantial justice as between these parties, being anxious to do what we believed to be just and right rather than being concerned about the nonessentials appertaining to technicalities and form.

The record in this case clearly shows that nothing short of an unreasonable, unjustifiable, technical construction of the statute and rules of court could sustain the contention made by respondent in this petition for rehearing. Turning from technicalities to considerations of justice and right, there is nothing to sustain him. Respondent met with a serious injury and his misfortune must appeal to anyone with a human heart. But courts must be controlled by the facts and law, and not by sympathy or prejudice. Many persons suffering injuries as great as those of respondent have been awarded judgments much less in amount than $20,-000. Counsel has not pointed out an instance where any person with injuries no greater than those of respondent ever recovered $20,000. We know of no such instance.

None of the judges of this court dissented from the proposition that the verdict was excessive. Had it been an original proposition, the court would have placed the amount less than $20,000; but in order to sustain the verdict of the jury as far as we conscientiously could, it was decided to allow $20,-000. We do not believe any fair-minded, disinterested person can read the evidence without reaching the conclusion

that $20,000 is a *very* liberal compensation for respondent's injuries. In the face of this record showing a grossly excessive verdict—in the face of our conviction that the amount of the judgment is unwarranted and wrong, we are urged to uphold the judgment. We are vigorously criticised for not so doing. We are requested to adjudicate the court powerless to rectify a gross injustice clearly shown by the record. As a justification for upholding this palpable wrong, we are urged to endorse a strained, highly technical interpretation of a rule of court, and an unfair and unreasonable construction of an oral concession or waiver of appellant's counsel. We decline to avoid our plain duty upon any such pretext. Courts will not be astute to invoke or apply technical constructions or to indulge in fanciful refinements for the purpose of thwarting the demands of justice and right. Our code, and the spirit pervading our entire jurisprudence, require that this and all courts in this state should endeavor to mete out substantial justice. Had we been controlled by strict technical considerations, we would doubtless have reversed the case and directed a new trial unconditionally. But we believed there could be virtually no question upon a retrial except that of the amount of the recovery. To obviate the trouble, expense and delay of another trial, we deemed it to be in the interest of substantial justice to give respondent the option of a judgment for $20,000 or of submitting to a new trial.

Under the law and facts of this case, if anyone has cause for dissatisfaction, it is the appellant. But everything considered, we are satisfied that substantial justice has been done as between these parties. Each side has been heard by four briefs and two oral arguments. The evidence and entire record has been examined and considered most conscientiously and the court has endeavored to be fair and just. Believing that respondent's rights have been in no manner prejudiced, his petition for a rehearing is denied.

MOUNT, C. J., HADLEY, and CROW, JJ., concur.

DUNBAR, J. (dissenting)—I dissent.   I should not feel it
incumbent upon me to further discuss this case did I not
feel that the court has misconstrued the position of counsel
for respondent in the foregoing opinion.   I have believed,
and am constrained to believe yet, that this court has not here-
tofore, and does not now, understand the position taken by
counsel for the respondent.   It is true, the counsel asserted
that this court, in common with the majority of courts, had
conceded to courts the power to reduce verdicts when they
were deemed excessive, even though it was not claimed that
the verdict had been induced by passion or prejudice; and
cited many cases to sustain that position.   But, of course, in
all such cases it was assumed that an assignment of error had
been made that the judgment *was* excessive; and respondent's
argument was made to show that such an assignment *could*
be made in answer to the claim of the appellant that he *could
not* assign "excessive verdict" because he did not claim that
it was induced by passion or prejudice on the part of the
jury, but was by reason of alleged errors made by the court.

The majority, in order to sustain the conclusion announced,
cite copiously from appellant's brief, pages 18, 22 and 26,
where it is insisted that the court erred in relation to the
admission of testimony, which errors were properly assigned
and discussed; and then says:

"It is plain that, if appellant's contention was sound, the
error complained of must have tended to arouse passion and
prejudice on the part of the jury and to have placed before
them improper evidence bearing very materially upon the
amount of the verdict."

It is difficult to see what relevancy this statement has, in
the face of the opinion rendered by the majority on appel-
lant's petition for rehearing, where it was held that the court
did not err in the particulars complained of.   So that it
must logically follow that, if there was no passion or preju-
dice on the part of the jury—which is admitted—and no

error committed by the court which prevented a fair trial or tended in any way to arouse passion or prejudice—which is decided—the judgment should have been affirmed. The court, to sustain its conclusion in denying respondent's petition, says:

"If passion or prejudice on the part of the jury is shown, the court may reverse the judgment or reduce it even if there is no other error in the case. On the other hand, if no passion or prejudice is shown, but errors as to admission or exclusion of evidence or as to instructions or as to any other matter, are shown which this court believes had the effect of augmenting the amount of the verdict, this court may give relief to the party injured by said errors, and that relief may be by an absolute reversal, a modification of the judgment or an order for a new trial conditioned upon the successful party declining to remit such a portion as may be indicated."

But no passion or prejudice on the part of the jury was shown, which fact has all along been conceded by the appellant, and which admission he pleads as an excuse for not making the assignment of excessive verdict. On the other hand, it has been decided by this court that there were no errors as to the admission or exclusion of evidence, or as to instructions, or as to any other matter which this court believed had the effect of augmenting the amount of the verdict. Then, what is the basis of the relief which the court has given? The palpable fact to my mind is, and that fact cannot be talked out of existence, that the present judgment of the court, as indicated by the majority opinion, is absolutely inconsistent with the judgment rendered and opinion expressed on the appellant's petition for rehearing; and every argument which is made in support of the present opinion is an argument against the former opinion.

There is an attempted distinction made between assignments of error in regard to excessive verdicts and other assignments, but I will pass that by simply saying that I had always supposed that any and all contentions which might

result in the reversal or modification of a judgment, in whole or in part, would fall within the same rule, and that a respondent would be equally entitled to defend his judgment, or any part of it, by argument made to this court, no matter what the assigned cause for its reversal was.

In defense of the position now announced by the court, that this court will determine questions which are not assigned, the majority say that no cases have been decided where this or other courts have refused to take such cognizance which are exactly like the case at bar; and all the cases cited by the respondent and in the dissenting opinion on the appellant's petition for rehearing in this case are thus brushed aside. No two cases present exactly the same state of facts, but multitudes of cases do embody the same principles; and this principle has been so often announced by this court that it would be idle to reproduce the citations here.

But if any argument were necessary to show the fallacy of the position contended for by the majority and the absurd results which will follow, it is furnished by the majority opinion where it sets forth the conflicting contentions of respective counsel as to what was admitted in oral argument concerning the justice of the amount of the verdict. If there had been an argument made in the brief, as the law and the rules of this court plainly provide, the issues would have been presented and understood without resorting to a discussion and analysis of conflicting oral statements by respective counsel and of affidavits offered to show what the issues really were.

In conclusion, if the doctrine announced by the majority opinion prevails, viz., that no further assignment of error need be made in the brief than that the court erred in refusing to grant a motion for a new trial, and that no argument is required, then all that it is necessary for an appellant to do is to make the one assignment, that the court erred in refusing to grant a new trial; and that brings before this court

all the questions assigned upon the motion for a new trial, even though there be a hundred or more, without any notice whatever to opposite counsel as to what particular errors are relied upon, or what particular ones have been abandoned, since the motion for a new trial was made. For it must be true that, if one of the grounds of motion for a new trial can be reviewed upon appeal without an assignment or argument, they can all be reviewed—a practice which, if it prevails, will lead to confusion and injustice.